IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI

| | | |
|---|---|---|
| CHRISTOPHER AND PAULA ANDREW | ) | |
| Husband and Wife; | ) | |
| ANDREW AND GLENDA BEACH | ) | |
| Husband and Wife; | ) | |
| OTTO D. AND JENNIFER L BREWER | ) | |
| Husband and wife; | ) | |
| RICHARD G. AND KIMBERLY A. BRULL | ) | |
| Husband and Wife; | ) | |
| BERNARD CHILDS | ) | |
| A Single Person; | ) | |
| DAVID A. AND THERESE M. CHILDS | ) | |
| Husband and Wife; | ) | |
| ALBERT A. AND KARIN P. DALKEY | ) | |
| Husband and Wife; | ) | |
| JAMES P. AND THERESA F. DODSON | ) | |
| Husband and wife; | ) | |
| EVANS RENOVATIONS MO LLC a Missouri | ) | Case No. _____ |
| LLC; | ) | |
| GREEN 1991 FAMILY TRUST ½ INT AND | ) | JURY TRIAL DEMANDED |
| MICHAEL GREENBERG ½ INT BY JACK K | ) | |
| AND LEE A GREEN  (GREENBERG) | ) | |
| TRUSTEES | ) | |
| RICKI HOLMES | ) | |
| A Single Person; | ) | |
| IRA PLUS SOUTHWEST LLC FBO MELANIE | ) | |
|  BRENEMAN IRA 75% % LARRY AND | ) | |
| MELANIE  BRENEMAN 25%, a Texas LLC; | ) | |
| DENNIS AND DEANNE L KORYCKI | ) | |
| Husband and Wife; | ) | |
| LAKE VIEW  & CLASSIC PROPERTIES LLC | ) | |
| C/O Barbara Mishkin a Missouri LLC; | ) | |
| LD VALLEY VIEW # 5 FAMILY LIMITED | ) | |
| PARTNERSHIP | ) | |
| MANUBAY TEODORO A LIVING | ) | |
| TRUST 6/10/1986 | ) | |
| ANTHONY J. AND JULIE A.  MARSCHNER | ) | |
| Husband and wife; | ) | |
| LAURENCE I AND TERESA L MILLER | ) | |
| Husband and Wife; | ) | |
| HAROLD LEROY AND MARJORIE  MINATRE | ) | |
| Husband and Wife; | ) | |
| J. RONALD AND FAYE MONTGOMERY | ) | |
| Husband and Wife; | ) | |

1

PARADISE CHATEAU TRUST 11/30/2007 )
 TRUST C/O Marilyn K. Beck )
RABAZA DIONISIO & ELIANE GRAS C/O )
JOHN STRAND )
RAGAT FAMILY 2008 TRUST 07/10/2008 )
C/O Gary Ragat )
RAIDEL ELIZABETH W REVOCABLE TRUST )
08-09-1999 )
CHAD AND AMY REGISTER )
Husband and Wife; )
CHRIS AND TRACY ROBINSON )
Husband and Wife; )
STANLEY K. AND NORMA RYAN )
Husband and Wife; )
PATRICK N. AND ELIZABETH A. SEARS )
Husband and Wife; )
GREGORY M. AND STEPHANIE G. SMITH )
Husband and Wife; )
MATTHEW G. AND TRENDA L. SOMERS )
Husband and Wife; )
MARK AND SUSAN STEPHENS )
Husband and Wife; )
SUNBELT CAPITAL VENTURES INC. )
TAX FREE STRATEGIES LLC FBO CRAIG )
LAWRENCE WHEELER IRA )
TAX FREE STRATEGIES LLC C/O )
DALE HICKS )
 )
vs. )        Case No. _____
 )
 )
BLH Development Company, LLC )        JURY TRIAL DEMANDED
A Missouri Limited Liability Company; )
 )        FEDERAL COMPLAINT FOR:
Branson Landing Hotel, LLC dba the )
Hilton Branson Convention Center Hotel; )        (1) VIOLATION OF §12(a)(1) OF
A Missouri Limited Liability Company )        THE SECURITIES ACT OF 1933
 )
BLR Downtown Realty, LLC dba Branson )        (2) VIOLATION OF §12(a)(2) OF
Landing Realty )        THE SECURITIES ACT OF 1933
A Missouri Limited Liability Company; )
 )        (3) VIOLATION OF §10(b) OF
Richard E. Huffman, individually as alter ego )        THE SECURITIES ACT OF 1934
Of non-existent corporation known as )
Convention Center Hotel Master )        (4) VIOLATION OF
Association, Inc.; )        R.S.Mo. §409-003.301
 )

2

| | |
|---|---|
| Hilton Worldwide, Inc.,<br>A Delaware Corporation; | ) ) | (5) VIOLATION OF<br>R.S.Mo. §409-005.501 |
| HCW, L.L.C., a Missouri LLC; | ) ) | (6) VIOLATION OF<br>R.S.Mo. §407.020, et. seq. |
| HCW Management Consultants, L.L.C.,<br>A Missouri LLC; | ) ) | (7) FRAUDULENT<br>MISREPRESENTATION |
| And | ) ) | (8) NEGLIGENT<br>MISREPRESENTATION |
| HCW Development Company, LLC,<br>A Missouri LLC. | ) ) | (9) FRAUD IN THE<br>INDUCEMENT |

) (5) VIOLATION OF
) R.S.Mo. §409-005.501
)
) (6) VIOLATION OF
) R.S.Mo. §407.020, et. seq.
)
) (7) FRAUDULENT
) MISREPRESENTATION
)
) (8) NEGLIGENT
) MISREPRESENTATION
)
) (9) FRAUD IN THE
) INDUCEMENT
)
) (10) FRAUDULENT
) CONCEALMENT
)
) (11) BREACH OF FIDUCIARY
) DUTY
)
) (12) UNLAWFUL TRANSACTION
) OF BUSINESS
)
) AND
)
) (13) BREACH OF CONTRACT
) AND UNJUST ENRICHMENT

Defendants.

## COMPLAINT

COME NOW, Plaintiffs, Christopher and Paula Andrew, Andrew and Glenda Beach,

Otto D and Jennifer Brewer, Richard G. and Kimberly A. Brull, Bernard Childs, David A. and

Therese M. Childs, Albert A. and Karin P. Dalkey, James P. and Theresa F. Dodson, Evans

Renovations Mo, LLC, a Missouri LLC, Green 1991 Family Trust ½ Int & Michael Greenberg ½

Jack K. & Lee A. Green (Greenberg) Trustees, Ricki Holmes, Ira Plus Southwest, LLC FBO

Melanie Breneman IRA 75% % Larry & Melanie Breneman 25%; a Texas LLC, Dennis and

Deanne L Korycki, Lake View & Classic Properties, LLC C/O Barbara Mishkin, L D Valley

View #5 Family Limited Partnership, Manubay Teodoro A Living Trust 6/10/1986, Anthony J.

3

and Julie A. Marschner, Lawrence I. and Teresa L. Miller, Harold Leroy and Marjorie Minatre, J. Ronald and Faye Montgomery, Paradise Chateau Trust 11/30/2007 C/O Marilyn K. Beck, Rabaza Dionisio & Eliane Gras C/O John Strand, Ragat Family 2008 Trust 07/10/2008 C/O Gary Ragat, Elizabeth W. Raidel Revocable Trust 8/9/1999, Chad and Amy Register, Chris and Tracy Robinson, Stanley K. and Norma Ryan, Patrick N. and Elizabeth A. Sears, Gregory M. and Stephanie G Smith, Matthew G. and Trenda L. Somers, Mark and Susan Stephens, Sunbelt Capital Ventures INC, Tax Free Strategies LLC, FBO Craig Lawrence Wheeler IRA 59086, Tax Free Strategies LLC, C/O Dale Hicks, (collectively "Plaintiffs"), against Defendants, BLH Development Company, LLC a Missouri Limited Liabilty Company, Branson Landing Hotel, LLC dba the Hilton Branson Convention Center Hotel; A Missouri Limited Liability Company, BLR Downtown Realty, LLC dba Branson Landing Realty a Missouri Limited Liability Company, Richard E. Huffman, individually for Convention Center Hotel Master Association, INC., Hilton Worldwide, Inc., a Delaware Corporation, HCW, L.L.C., a Missouri LLC, HCW Management Consultants, LLC., a Missouri LLC, and HCW Development Company, LLC, a Missouri LLC, (collectively "Defendants"), and allege, based upon information and belief, except where otherwise stated as

follows:

NATURE OF THE ACTION

1. This Complaint involves a scheme among the Defendants by which Plaintiffs were illegally and fraudulently induced into purchasing the air rights to condominium-hotel room units as investment securities (the "Securities") at the Hilton Branson Convention Center Hotel known as the Penthouse ( "Penthouse") in 2005, 2006, 2007, 2008, & 2009.

2. The project is referred to as the Hilton Penthouse Convention Center Hotel.

3. In addition, Defendants, specifically Richard E. Huffman, engaged in the unlawful practice of business by charging Plaintiffs through the Penthouse Condominium Owners' Association, Inc. thousands of dollars per year which were paid to Convention Center Hotel Master Association, Inc. a corporation which is not registered to do business in the State of Missouri.

4. Defendants, specifically Hilton Worldwide, Inc., has engaged in business practices by which it rents Plaintiffs' hotel rooms to the public free of charge or at a reduced rate to the customer through the Hilton Honor's Program, pays the Plaintiff, unit owner, roughly thirteen dollars and the unit owner incurs all costs including utilities, taxes, insurance and other service fees resulting in a net loss to the Plaintiff without Plaintiffs contractual consent.

5. Plaintiffs all acquired these Securities beginning in 2005 with the transfer of the title of the Securities from Defendants to Plaintiffs without first registering the certificate of sale of the Securities as a security as required by law and without being exempt therefrom. The air rights to the hotel condominium units are securities because:

    a. Plaintiffs invested their money in the condominium unit the value of which is entirely dependent upon the success or failure of the Branson Landing enterprise;

    b. Defendants' sales promotions of the investment in the hotel room in conjunction with the contemporaneous offer of a rental program reasonably led to the understanding that a valuable benefit, over and above the initial payment for the physical air rights to the hotel room, would accrue to the Plaintiffs as a result of the operation of the hotel as a Hilton branded common enterprise pursuant to the Hilton nightly rental program; and

5

c.  Plaintiffs, as owners of shares in the enterprise, by investing with the Hilton rental program, did not receive and did not wish to receive any right to manage or exercise control over the decisions of the Hilton enterprise and expectation of profits are solely derived from the efforts of that third party.

6.  Defendants, specifically BLR Downtown Realty, LLC, made specific revenue projections and offerings of a rental program to Plaintiffs during the sales presentation.

7.  The Defendants' marketing of the Securities omitted material facts and represented that the Securities would generate a substantial amount of revenue to each purchaser. Defendants, through their sales teams, gave sales presentations to potential purchasers which heightened purchasers expectations of a substantial economic benefit of the net rental income to be made from the Securities branded as the Hilton Penthouse Convention Center Hotel through the Hilton Rental Program. The sales presentations used written material along with sales discussions that presented, *inter alia*,;

a.  a booklet containing occupancy projections, competitive comparisons with other hotel rentals, as well as income projections based on occupancy projections;

b.  a projection of anticipated rental rates of the Securities branded as Hilton hotel rooms;

c.  competitive comparisons of rental income projections of the Securities branded as Hilton hotel rooms as compared to similar hotel rooms in the area; and

d.  projections of future occupancy rates of the Securities branded as Hilton hotel rooms.

Defendant's representations were not limited to offering the rental program as part of the Hilton Penthouse Convention Center Hotel enterprise but Defendant's marketing strategy

6

based the sale of the Securities as part of the Hilton Penthouse Convention Center Hotel enterprise's goal, to generate a revenue split for investors by using the Hilton rental program to rent the Securities while intentionally omitting material facts to Plaintiffs.

8.  The portions of Defendants' marketing scheme that emphasized the economic benefit from the rental of the Securities as represented by the Hilton branded hotel rooms as part of the Hilton Penthouse Convention Center Hotel enterprise went above and beyond simply mentioning that a rental program was offered by Defendant. These rental revenue discussions along with written representations were the centerpiece of the sales presentation and took place as part of the offering and sale. The Plaintiffs' decision to enter into the Hilton branded hotel room rental program was not reached independently of the decision to purchase the Securities, as the Hilton branded hotel room rental program was an integral part of the purchase of the Securities. The Hilton branded hotel room was part of the Hilton Penthouse Convention Center Hotel enterprise and was represented as such by the Defendants.

9.  In order to purchase the Securities, the Plaintiffs individually entered into investment contracts with the Defendants whereby Plaintiffs agreed to pay to Defendants a certain sum for the Securities at the closing, at which point the Securities were transferred to Plaintiffs.

10. The amounts Plaintiffs paid to purchase their Securities were subjected to the risks of the Hilton Penthouse Convention Center Hotel enterprise to rent the rooms at a projected rate for a projected number of days each year. The enterprise of the Hilton Penthouse Convention Center Hotel consists of: (a) the rental program; (b) the Penthouse Hotel; and (c) other Hilton Branded amenities such as dining, pool, work out facilities, and retail.

7

The rental program places the Plaintiffs' Securities into the hotel's room inventory to be used as luxury suites by Defendants. As a result of the rental program, Plaintiffs have no mechanism by which to control the rental process or their unit.

11. Defendants did not disclose prior to Plaintiffs' purchase that the nightly rental rates of Defendants' hotel rooms that were competing with Plaintiffs' hotel rooms would be offered to the general public at desperate rates with Defendants' rooms averaging $50.00 to $150.00 less per night than Plaintiffs' rooms.

12. Defendants' sales teams falsely represented to Plaintiffs that the rental program would be arranged for the rental of Plaintiffs' units whereby the owner of the unit would receive 50% of the rental revenue and Defendants would receive 50% of the rental revenue. The true facts of the situation is that Defendants receive their 56% of the rental revenue and Plaintiffs are credited with their 44% (less the 4% of the gross revenue that is withheld for a reserve fund [which calculates to 9% of the unit owners' net revenue]) but Plaintiffs receive little or no income from the rental revenue due to the previously undisclosed costs Plaintiff must pay for that Defendant is not responsible for. As part of the scheme, Defendants charged the Plaintiffs fees which significantly reduce Plaintiffs' share of the revenue. Defendants also failed to share with Plaintiffs 100% of the revenue which was produced as a result of the rental of Plaintiffs' units.  When an owner unit is rented, the revenues produced from the room service, internet fees, pay per view television, income from the mini-bar, income from grocery service, and other common elements of the Hilton Penthouse Convention Center Hotel which were used by the renter were not shared with the Plaintiff. Solely out of Plaintiffs' share of revenue, Plaintiffs pay 100% of all other additional expenses not revealed until after the purchase agreement and rental

agreements were signed. These additional charges include a monthly linen fee, smoke alarm battery replacement fee, biannual deep cleaning fee, service fees and commissions, hotel rental income shares and association dues, not including property taxes and insurance. The Defendants receive in whole or in part all of these fees. The additional fees reduced Plaintiffs' share of the revenue in most cases to zero and in some cases to a loss in the range of over $20,000.00 per year.

13. During the sales presentations, Defendants touted the amount of profits that Plaintiffs would receive from the revenue generated by the rental of the Securities through Defendants' rental program. Defendants, however, failed to mention the double dip resulting from the front end fees and charges paid by Plaintiffs only reducing the Plaintiff's share of the rental revenue and the back end revenue split again reducing Plaintiff's share of the revenues. As a result, Plaintiffs receive no more than 30% of the revenues before payment of taxes, insurance and loan charges rather than the 50% as represented by Defendants. Since the fees are assessed monthly regardless of whether there is any revenue, the actual percentage received by Plaintiffs after payment of fees can drop substantially as gross revenues decline as a result of reduced occupancy and/or room rates. Prior to the purchase, Plaintiffs were presented with a document entitled "Rental Program, General Summary and Commonly Asked Questions" which states in part eleven that the expenses are not expected to exceed ten percent of the published rack room rate, a gross misrepresentation. See Exhibit "2".

14. At all relevant times hereto, Defendants operated the Hilton Penthouse Convention Center Hotel in Missouri and sold the Securities to purchasers in Missouri and other states. Most offers to purchase or sell the Securities between Plaintiffs and Defendants

9

took place in Branson, Missouri and were governed by Missouri law. Some purchases took place at the purchaser's home or in a location in the purchaser's home town but the documents reflect the transactions are to be governed by Missouri law.

15. All of the Securities sold to Plaintiffs by Defendants were sold pursuant to substantially the same marketing strategy of fraudulently raising the potential buyer's expectation of substantial economic benefits from the purchase and ownership of the Securities branded as part of the Hilton enterprise and at the same time concealing the true facts. In every sale that was made of Securities to the Plaintiffs, Defendants uniformly misrepresented the extent of the economic benefit that would be generated from the ownership of the Securities, as Hilton Branded Securities, and uniformly concealed material facts.

16. As more particularly described herein, the Securities were sold and offered in conjunction with one or more of the following three factors:

    a. Emphasis on economic benefits to the purchaser to be derived from the managerial efforts of the promoter, or a third party designated or arranged for by the promoter, from rental of the units;

    b. The offering of participation in a rental management program; or

    c. The offering of a rental or similar arrangement whereby the owner must hold his unit available for rental for any part of the year, must use an exclusive rental agent or is otherwise materially restricted in his occupancy or rental of his unit.

17. In this suit, Plaintiffs seek rescission as well as equitable relief, including declaratory, injunctive, restitutionary and other equitable monetary relief, and damages as set forth more fully below.

THE PARTIES

10

18. Plaintiffs Christopher and Paula Andrew (husband and wife) are residents of Joplin, Missouri, who purchased Security number 1201 for $439,900.00 on September 13, 2005. The certification pursuant to the federal securities laws for Plaintiffs Andrew is attached hereto as part of Exhibit #1.

19. Plaintiffs Andrew and Glenda Beach (husband and wife) are residents of Springfield, Missouri, who purchased Security number 1132 for $187,900.00 on September 8, 2007. The certification pursuant to the federal securities laws for Plaintiffs Beach is attached hereto as part of Exhibit #1.

20. Plaintiffs Otto D. and Jennifer Brewer (husband and wife) are residents of Spanish Fort, Alabama, who purchased Security number 1102 for $199,900.00 on December 3, 2005. The certification pursuant to the federal securities laws for Plaintiffs Brewer is attached hereto as part of Exhibit #1.

21. Plaintiffs Richard G. and Kimberly A. Brull (husband and wife) are residents of North Kansas City, Missouri, who purchased Security number 1024 for $297,900.00 on September 7, 2007. The certification pursuant to the federal securities laws for Plaintiffs Brull is attached hereto as part of Exhibit #1.

22. Plaintiff Bernard Childs is a resident of Key Largo, Florida, who purchased Securities numbered 1009, 1117, 909 and 911 on October 19, 2007 for a total investment of $1,173,600.00. The certification pursuant to the federal securities laws for Plaintiff Childs is attached hereto as part of Exhibit #1.

23. Plaintiffs David A. and Therese M. Childs (husband and wife) are residents of Dearborn Heights, Michigan, who purchased Security number 1001 for $327,900.00 on September

11

14, 2007. The certification pursuant to the federal securities laws for Plaintiffs Childs is attached hereto as part of Exhibit #1.

24. Plaintiff Albert A. and Karin P. Dalkey is a resident of Colfax, North Carolina, who purchased Securities numbered 909 and 902 on November 13, 2007 for a total investment of $369,800.00. The certification pursuant to the federal securities laws for Plaintiff Dalkeys is attached hereto as part of Exhibit #1.

25. Plaintiffs James P. and Theresa F. Dodson (husband and wife) are residents of Shreveport, Louisiana, who purchased Security number 1018 for $297,900.00 on August 31, 2007. The certification pursuant to the federal securities laws for Plaintiffs Dodson is attached hereto as part of Exhibit #1.

26. Plaintiff Evans Renovations Mo, LLC, a Missouri LLC; who purchased Security number 1011 for a purchase price of $250,000.00 on January 16, 2009. The certification pursuant to the federal securities laws for Plaintiff Evans Renovations MO, LLC, is attached hereto as part of Exhibit #1.

27. Plaintiff Green 1991 Family Trust ½ Int & Michael Greenberg ½ Jack K & Lee A Green (Greenberg) Trustees is a resident of Las Vegas, Nevada, who purchased Security numbered 1017 for a purchase price of $327,900.00 on September 14, 2007. The certification pursuant to the federal securities laws for Plaintiff Green 1991 Family Trust ½ Int & Michael Greenberg ½ Jack K & Lee A Green (Greenberg) Trustees is attached hereto as part of Exhibit #1.

28. Plaintiff Ricki Holmes is a single person and is a resident of Branson, Missouri, who purchased Security number 915 for the purchase price of $189,900.00 on November 14,

2005. The certification pursuant to the federal securities laws for Plaintiff Ricki Holmes is attached hereto as part of Exhibit #1.

29. Plaintiff Ira Plus Southwest, LLC FBO Melanie Breneman IRA 75% % Larry & Melanie Breneman 25%; a Texas LLC purchased Security number 908 for a purchase price of $169,000.00 on September 17, 2007. The certification pursuant to the federal securities laws for Plaintiff Ira Plus Southwest, LLC FBO Melanie Breneman IRA 75% % Larry & Melanie Breneman 25%, is attached hereto as part of Exhibit #1.

30. Plaintiffs Dennis and Deanne L. Korycki (husband and wife) are residents of Oak Forest, Illinois, who purchased Security number 907 for $189,000.00 on August, 2007. The certification pursuant to the federal securities laws for Plaintiffs Korycki is attached hereto as part of Exhibit #1.

31. . Plaintiff Lake View & Classic Properties, LLC C/O Barbara Mishkin; a Missouri LLC purchased Security number 1109 for a purchase price of $207,900.00 on December 26, 2007. The certification pursuant to the federal securities laws for Plaintiff Lake View & Classic Properties, LLC C/O Barbara Mishkin, is attached hereto as part of Exhibit #1.

32. Plaintiff L D Valley View #5 Family Limited Partnership; is a residents of Bluffton, South Carolina, purchased Security number 917 for a purchase price of $271,915.00 on October 16, 2008. The certification pursuant to the federal securities laws for Plaintiff L D Valley View #5 Family Limited Partnership, is attached hereto as part of Exhibit

33. Plaintiff Manubay Teodoro A Living Trust 6/10/1986 is a resident of Kennet, Missouri, purchased Security numbered 1123 for a purchase price of $335,900.00 on November 6, 2005. The certification pursuant to the federal securities laws for Plaintiff Manubay Teodoro A Living Trust 6/10/1986 is attached hereto as part of Exhibit #1.

13

34. Plaintiffs Anthony J. and Julie A. Marschner (husband and wife) are residents of Milwaukee, Wisconsin, who purchased Security number 1034 and 1036 for a total investment of $475,800.00 on September 5, 2007. The certification pursuant to the federal securities laws for Plaintiffs Marschner is attached hereto as part of Exhibit #1.

35. Plaintiffs Lawrence I. and Teresa L. Miller (husband and wife) are residents of Kirksville, Missouri, who purchased Security number 1105 for $205,000.00 on November 15, 2007. The certification pursuant to the federal securities laws for Plaintiffs Miller is attached hereto as part of Exhibit #1.

36. Plaintiffs Harold Leroy and Marjorie Minatre (husband and wife) are residents of Stockton, California, who purchased Security number 1142 and 1007 for a total investment of $531,900.00 on October 15, 2007. The certification pursuant to the federal securities laws for Plaintiffs Minatre is attached hereto as part of Exhibit #1.

37. Plaintiffs J. Ronald and Faye Montgomery (husband and wife) are residents of Longmont, Colorado, who purchased Security number 1121 for $207,900.00 on August 29, 2007. The certification pursuant to the federal securities laws for Plaintiffs Montgomery is attached hereto as part of Exhibit #1.

38. Plaintiff Paradise Chateau Trust 11/30/2007 C/O Marilyn K. Beck is a resident of Kansas City, Missouri, purchased Security numbered 1105 for a purchase price of $199,900.00 on October 30, 2007. The certification pursuant to the federal securities laws for Plaintiff Paradise Chateau Trust 11/30/2007 C/O Marilyn K. Beck is attached hereto as part of Exhibit #1.

39. Plaintiffs Rabaza Dionisio & Eliane Gras C/O John Strand (individuals) are residents of Mountain Home, Arkansas, who purchased Security number 1233 for $449,900.00 on

December 27, 2005. The certification pursuant to the federal securities laws for Plaintiffs Rabaza Dionisio & Eliane Gras C/O John Strand is attached hereto as part of Exhibit #1.

40. Plaintiff Ragat Family 2008 Trust 07/10/2008 C/O Gary Ragat is a resident of Oceanside, California, purchased Security numbered 1021 for a purchase price of $199,000.00 on July 29, 2008. The certification pursuant to the federal securities laws for Plaintiff Ragat Family 2008 Trust 07/10/2008 C/O Gary Ragat is attached hereto as part of Exhibit #1.

41. Plaintiff Elizabeth W. Raidel Revocable Trust 8/9/1999 is a resident of Springfield, Missouri, purchased Security numbered 906 for a purchase price of $289,900.00 on August 28, 2007. The certification pursuant to the federal securities laws for Plaintiff Elizabeth W. Raidel Revocable Trust 8/9/1999 is attached hereto as part of Exhibit #1.

42. Plaintiffs Chad and Amy Register (husband and wife) are residents of Paragould, Arkansas, who purchased Security number 1130 for $299,900.00 on August 30, 2007. The certification pursuant to the federal securities laws for Plaintiffs Register is attached hereto as part of Exhibit #1.

43. Plaintiffs Chris and Tracy Robinson (husband and wife) are residents of Imperial, Missouri, who purchased Security number 934 for $169,900.00 on November 26, 2005. The certification pursuant to the federal securities laws for Plaintiffs Robinson is attached hereto as part of Exhibit #1.

44. Plaintiffs Stanley K. and Norma Ryan (husband and wife) are residents of Blue Mound, Illinois, who purchased Security number 1136 for $250,000.00 on December 18, 2008. The certification pursuant to the federal securities laws for Plaintiffs Ryan is attached hereto as part of Exhibit #1.

45. Plaintiffs Patrick N. and Elizabeth A. Sears (husband and wife) are residents of La Mesa, California, who purchased Security number 1224 for $199,900.00 on June 17, 2006. The certification pursuant to the federal securities laws for Plaintiffs Sears is attached hereto as part of Exhibit #1.

46. Plaintiffs Gregory M. and Stephanie G. Smith (husband and wife) are residents of Chesterfield, Missouri, who purchased Security number 1030 for $297,000.00 on September 27, 2007. The certification pursuant to the federal securities laws for Plaintiffs Smith is attached hereto as part of Exhibit #1.

47. Plaintiffs Matthew G. and Trenda L. Somers (husband and wife) are residents of Morrison, Colorado, who purchased Security number 1035 for $199,900.00 on September 21, 2007. The certification pursuant to the federal securities laws for Plaintiffs Somers is attached hereto as part of Exhibit #1.

48. Plaintiffs Mark and Susan Stephens (husband and wife) are residents of Bolivar, Missouri, who purchased Security number 901 for $319,900.00 on August 27, 2007. The certification pursuant to the federal securities laws for Plaintiffs Stephens is attached hereto as part of Exhibit #1.

49. Plaintiff Sunbelt Capital Ventures, Inc. are residents of Roland, Oklahoma who purchased Security number 916 for a purchase price of $220,000 on January 16, 2009. The certification pursuant to the federal securities laws for Plaintiff Sunbelt Capital Ventures Inc, is attached hereto as part of Exhibit #1.

50. Plaintiff Tax Free Strategies, LLC, FBO Craig Lawrence Wheeler IRA 59086; a Florida LLC purchased Security numbers 1108 and 919 for a total purchase price of $387,800.00 on May 31, 2007 and March 10, 2006, respectively. The certification pursuant to the

federal securities laws for Plaintiff Tax Free Strategies, LLC, FBO Craig Lawrence Wheeler IRA 59086, is attached hereto as part of Exhibit #1.

51. Plaintiff Tax Free Strategies LLC, C/O Dale Hicks; a Florida LLC who purchased Security number 1206 for a purchase price of $200,000.00 on September 24, 2007. The certification pursuant to the federal securities laws for Plaintiff Tax Free Strategies LLC, C/O Dale Hicks, is attached hereto as part of Exhibit #1.

52. Defendant, BLH Development Company, LLC, is a Missouri LLC with its principle place of business in Branson, Taney County, Missouri. At all times relevant hereto, BLH Development Company, LLC was the Declarant of the Penthouse Condominium at Hilton Branson Convention Center, the project commonly known as Hilton Penthouse Convention Center Hotel. BLH Development Company, LLC was the initial owner of all units now owned by Plaintiffs at the development. BLH Development Company, LLC is also the owner of 192 hotel rooms currently competing with Plaintiffs' units at the development.

53. Defendant, Branson Landing Hotel, LLC, dba the Hilton Branson Convention Center Hotel is a Missouri LLC with its principle place of business in Branson, Taney County, Missouri. At all relevant times hereto, Branson Landing Hotel, LLC was project developer or hotel owner, promoter and advertiser of the Hilton Penthouse Convention Center Hotel who engaged Hilton Worldwide, Inc. as the manager of the Hilton Penthouse Convention Center Hotel.

54. Defendant, Hilton Worldwide, Inc., is a Delaware corporation doing business through its employees, agents and entities in Branson, Taney County, Missouri. At all times relevant

hereto, Hilton Worldwide, Inc. was the property manager of the Hilton Penthouse Convention Center Hotel, managing the nightly rentals of Plaintiffs' Securities.

55. Defendant, HCW, LLC is a Missouri LLC with its principle place of business in Branson, Taney County, Missouri. At all relevant times hereto, was the overarching entity developing the Branson Landing Enterprise and the developer of the Hilton Penthouse Convention Center Hotel.

56. Defendant, HCW Management Consultants, LLC is a Missouri LLC with its principle place of business in Branson, Taney County, Missouri. At all relevant times hereto, have been managing the condominium owner's association for the Hilton Penthouse Convention Center Hotel.

57. Defendant, BLR Downtown Realty, LLC is a Missouri LLC with its principle place of business in Branson, Taney County, Missouri. At all times relevant hereto, BLR Downtown Realty, LLC was the main real estate sales agent for the condominium hotel units sold to Plaintiffs.

58. Defendant, Richard E. Huffman, individual, is the alter ego of Convention Center Hotel Master Association, Inc. a non-existent corporation. See Exhibit "3". At all times relevant hereto, Convention Center Hotel Master Association, Inc. purports to be the master association over the Hilton Penthouse Convention Center Hotel and charges and collects dues from Plaintiffs.

JURISDICTION AND VENUE

59. The federal law claims asserted arise under Section 10(b) of the Securities Exchange Act of 1934 ("1934 Act"), Rule 10-b5 promulgated thereunder, Section 12 of the Securities Act of 1933 Act ("1933 Act"). Jurisdiction is conferred by Section 27 of the 1934 Act

18

and Section 22 of the 1933 Act. Venue in the United States District Court for the Western District of Missouri is proper under Section 27 of the 1934 Act and Section 22 of the 1933 Act.

## THE SCHEME

60. This action involves a scheme by the Defendants independently and acting in concert as a single business enterprise to develop, control and operate a massive hotel project through funds derived from the sale of investment contract Securities to passive public investors and thereby recoup enormous profits through the development and operation of the hotel, as well as the satisfaction of Branson Landing's goal of creating a vast hotel complex to provide customers for the Branson Landing's restaurants and other commercial and entertainment businesses without incurring any cost to own and operate the Hilton Penthouse Convention Center Hotel. In order to avoid disclosing facts that would have exposed the negative aspects of the investment, Defendants intentionally and knowingly disguised their sale of these investment contract Securities as a real estate transaction, for the purpose of avoiding the requirement of both state and federal laws and regulations that require (a) honest and complete disclosure to investors; (b) just and honorable conduct by those who sell investments; (c) registration of the securities being sold and the incumbent disclosure involved therewith; as well as (d) the registration and qualification of the entities and individuals selling investment contract Securities.

61. As a result of this scheme to cheat and defraud Plaintiffs and similarly situated investors, Defendants were able to reap millions of illegal profits, by concealing from the unsuspecting investors the true nature of the investment scheme they had been lured into and at the same time distribute compensation and proceeds of that scheme to themselves

19

and their confederates without disclosure. Through this scheme, Defendants were able to conceal from their investors the material facts relating to their investments including the profits Defendants derive from the sales to Plaintiffs; the use of the proceeds of Plaintiffs' investments; the transactions occurring between Defendants and their confederates in this scheme as they shared and divided their spoils; the true economics of the investments and reasonable expectation of returns; the conflicts of interest between the investors and Defendants and their confederates in this scheme; and the nature and level of risks being undertaken by those who purchased these Securities that should have been disclosed.

62. As part of their scheme to cheat and defraud, Defendants made the conscious decision in connection with the development of the Branson Landing and the sale and distribution of the investment contract Securities used to finance the venture to conceal the economic realities of the transactions and to design the presentation and documentation of the transactions in such a way as to hide the true nature of the transactions and conceal material facts regarding their ongoing scheme to distribute unregistered investment contract Securities to public investors. As part of this scheme to distribute these unregistered Securities without an offering circular, Defendants intentionally omitted from disclosure a vast array of material information that should have been provided to investors and potential investors as part of the distribution of these Securities. The material matters that were intentionally and knowingly omitted and concealed included:

   a. A description of the business of the hotel project and the promoters of the development such that Plaintiffs could know and understand that the rooms labeled as condominium units at the Hilton Penthouse Convention Center Hotel were priced higher as nightly rentals to the public than the non-condominium

rooms owned by the developer and would not likely be rented unless the
developer's rooms were rented;

b.   A description of the plan of operation of the venture, including budget
information, sources of cash and anticipated expenditures such that Plaintiffs
could know and understand that the represented 50% revenue share to Plaintiffs
was actually no more than approximately 30% before Plaintiffs' taxes and loan
payments, and included a double dip;

c.   A clear disclosure that the developer has no obligation to pay any of the common
expenses and that Plaintiffs have an obligation to pay all common expenses;

d.   The number and nature of employees to be involved in the venture such that
Plaintiffs could know and understand that these employees would be paid for
exclusively by Plaintiffs;

e.   The market research and competitive information including the number of
competitors and the position of the venture among competitors such that Plaintiffs
could understand the rental risks and know that they would be paying monthly
overhead fees even when there were no rentals;

f.   The financial information about the business of the venture, its promoters and
each segment of their business such that Plaintiffs could know and understand that
Defendants had no financial risk in the lack of rentals of the owner units at the
Hilton Penthouse Convention Center Hotel because if the owner units were
unoccupied, the event cost Defendants nothing for the empty room;

g.   A description of the business structure relating to profits and expense distribution
so that Plaintiffs could know and understand that Plaintiffs were incurring all

expenses and competing with Defendant developer in occupancy and in rental pricing structure.

h. The information relating to compliance with state and local laws and regulations such that Plaintiffs could know and understand that they were purchasing unregistered Securities;

i. Any pending or threatened legal proceedings or the absence thereof such that Plaintiffs could know and understand the problems facing Defendants, as Defendants had multiple mechanic's liens and litigation filed against them in Taney County, Missouri Circuit Court regarding the subject property that were undisclosed to Plaintiffs at the time of closing;

j. Information with respect to any resale market for the Securities being sold and the potential for any resale market to develop such that Plaintiffs could know and understand that there would be no ready market for resale of these Securities at prices greater than or equal to the prices paid by Plaintiffs;

k. A description of all material risks of the investment such that Plaintiffs could know and understand that they risked losing their entire investment and were extremely unlikely to realize any profit or even recoup their original capital as the price of the Securities bore no reasonable relationship to the cash flow;

l. Not disclosing to Plaintiffs that Defendants were making a profit on each sale and the amount thereof, and that Defendants were going to withdraw money Plaintiffs invested as a fee;

m. The method and plan of the distribution of the investment contract Securities such that Plaintiffs could know and understand the amounts that were being paid as sales commissions;

n. The use of the proceeds and the approximate amount of such proceeds dedicated to each use such that Plaintiffs could know and understand that Plaintiffs were paying 100% of the ongoing costs of the Hilton Penthouse Convention Center Hotel and receiving approximately 30% or less of the operating income to pay their mortgages, insurance, condominium owner's association dues and taxes;

o. The identity of any agreements, arrangements or understandings with all brokers participating in the sales of the investment contract Securities including the compensation received by such persons such that Plaintiffs could know and understand the remuneration paid to the sales agent selling the Securities;

p. The identity, background and compensation of all executive officers and other persons serving in similar capacities as part of the management team such that Plaintiffs could know and understand the relationship between the members of management and others;

q. All material contracts relating to the venture including contracts with indemnities or promoters of the venture such that Plaintiffs could know and understand these risks; and

r. A complete disclosure that there was a unit management agreement that was between the developer and Plaintiffs and between the Hilton Worldwide, Inc. and the developer.

23

s.  A description of the investment contract Security including the rights and liabilities of the investors and the promoters such that Plaintiffs could analyze these rights and liabilities individually and with a representative.

t.  A complete disclosure of the fees associated with not participating in Defendants' rental program so that Plaintiffs could know that if they did not enroll their unit in Defendants' rental program that Defendants charged Plaintiffs a daily fee for not enrolling their unit.

63. Each and every one of these omissions is material to an investor or prospective investor and each was intentionally omitted from disclosures made in connection with sale of the investment contract Securities by Defendants.

64. Each Plaintiff named herein was subjected to like misrepresentations, omissions and concealments specifically listed in paragraph 62.

COUNT I

(Federal Securities Laws Violations by All Defendants)

65. Plaintiffs reallege and incorporate herein by reference the allegations contained in the preceding and subsequent Paragraphs of this Complaint as if fully set out herein en hac verba and further allege:

66. No registration statement was filed or in effect with the SEC pursuant to the Securities Act and no exemption from registration existed with respect to the Securities and transactions described in this Complaint.

67. Defendants, directly and indirectly, have: (a) made use of the means or instruments of transportation or communications in interstate commerce or of the mails to sell the Securities as described herein, through the use or medium of oral representations and

24

written materials; (b) caused the Securities to be carried through the mails or in interstate commerce, by any means or instruments of transportation, for the purpose of sale or delivery after sale; and/or (c) made use of the means or instruments of transportation or communication in interstate commerce or of the mails to offer to sell the Securities as described herein through use or medium of oral representations and written materials, as described in the Complaint, without a registration statement having been filed or being in effect with the Commission as to the Securities or qualification for an exemption therefrom.

68. Defendants sold investment contracts to Plaintiffs by offering for sale Securities in the form of condominium-hotel rooms at the Hilton Penthouse Convention Center Hotel. These offerings were more than merely a fee simple interest in land but were in actuality an investment contract sold into a common enterprise with the expectation of profits solely from the efforts of third parties.

69. Plaintiffs invested their money in a range from $169,000.00 to $475,800.00 per security.

70. Plaintiffs and each of them invested their money in a common enterprise known as Hilton Penthouse Convention Center Hotel whereby Hilton Worldwide, Inc. was to rent out the investment securities and Plaintiffs would make a profit.

71. Defendants sold Plaintiffs the investment securities on the basis that a third party, Hilton Worldwide, Inc., would use their efforts to make a profit for Plaintiffs in renting out their investment securities to the general public using the rental pool agreement (Unit Management Agreement).

72. Plaintiffs have little to no control over the rental or use of their unit, in fact Plaintiffs are penalized thirty-eight dollars per day for not participating in the rental program or if they exceed their own use of their unit by more than twenty-one (21) days per year.

73. Plaintiffs may not freely rent their unit on their own to the public, Plaintiffs may not rent their unit to tenants on a monthly or yearly basis, Plaintiffs may only stay in their own unit twenty-one days per year if the unit is not already rented to the public, in other words, Plaintiffs are materially restricted in the use of the unit.

74. Plaintiffs may not even access their own unit without first obtaining a new key card from the front desk after first making a reservation each time the Plaintiff wishes to access his or her own unit.

75. Defendants, directly and indirectly, offered to sell and indeed sold these Securities to Plaintiffs without a registration statement having been filed or being in effect with the SEC or qualify for an exemption therefrom. By reason of the foregoing, Defendants have violated Sections 5(a) and 5(c) of the Securities Act, 15 U.S.C. §§ 77e(a) and 77e(c).

76. By reason of the conduct alleged herein, Defendants violated Section 12(a)(1) of the 1933 Act. Plaintiffs demand rescission of these sales of unregistered Securities.

77. Defendants have further violated the Securities Act of 1933 by failing to comply with rules promulgated by the Securities and Exchange Commission (SEC) specifically Release No. 33-5347 which deals specifically with condominium sales.

78. Under SEC Release No. 33-5347, the condominium units Defendants sold to Plaintiffs are unregistered securities.

79. Defendants affirmatively and actively concealed their unlawful conduct from Plaintiffs. Defendants concealed the true nature of their unlawful conduct and acts in furtherance

26

thereof, and actively concealed their activities through various other means and methods to avoid detection. Defendants' investment contract, in the section entitles "The Penthouse Condominium Purchaser's Acknowledgment", included the following language specifically designed to conceal the fact Defendants were selling unregistered Securities:

> 19. NO SALES REPRESENTATIVE PROMISED THAT THE PRUCHASE OF A UNIT WOULD PROVIDE A RETURN ON INVESTMENT OR TAX ADVANTAGES. PARTICIPATION IN ANY RENTAL PROGRAM THAT MAY BE OFFERED IS NOT MANDATORY AND I MAY CHOSE (sic) TO ENTER THE RENTAL PROGRAM OF MY OWN VOLITION AT A LATER DATE. NO REPERSENTATION HAS BEEN MADE TO ME AS TO THE AMOUNT OF ANY GROSS RENTAL INCOME, THE NUMBER OF NIGHTS THE UNIT WILL BE RENTED, OR THE AVERAGE DAILY RENTAL PRICE, IF ANY.

80. Plaintiffs did not discover, and could not have discovered through the exercise of reasonable diligence, that Defendants were violating the securities laws as alleged herein until shortly before this action was commenced. As a result of the active concealment of the unlawful conduct by Defendants, any and all applicable statutes of limitations otherwise applicable to the allegations herein have been tolled.

## COUNT II

(Violation of Section 12(a)(2) of the 1933 Securities Act by All Defendants)

81. Plaintiffs reallege and incorporate herein by reference the allegations contained in the preceding and subsequent Paragraphs of this Complaint as if fully set out herein en hac verba and further allege:

82. Under Section 12(a)(2) of the Securities Act of 1933, Defendants were sellers, offerors and/or solicitors of the Securities. Defendants solicited the sale of the Securities to each of the Plaintiffs for Defendants' own financial benefit.

27

83. The statements referred to hereinabove were made in scripted oral representations and other materials made by Defendants to the Plaintiffs. The scripted oral representations to the Plaintiffs contained untrue statements of material facts, omitted other facts necessary to make the statements made not misleading and failed to disclose material facts. Defendants acted to sell the Securities by way of the scripted oral representations. Defendants' actions included preparing the scripted oral presentations and other material used in the sale of the Securities which were false and misleading because they did not disclose the material adverse facts set forth above.

84. Plaintiffs purchased the Securities pursuant to the Defendants' scripted oral representations. Plaintiffs did not know, and in the exercise of reasonable diligence could not have known, of the untruths and omissions contained in or made in connection with Defendants' scripted oral representations.

85. Defendants used real estate agents, not a securities broker dealer, to sell the unregistered securities.

86. By reason of the conduct alleged herein, Defendants violated Section 12(a)(2) of the 1933 Act and rules promulgated there under. As a proximate result of Defendants' violations Plaintiffs and each of the Plaintiffs have been damaged.

87. Defendants affirmatively and actively concealed their unlawful conduct from Plaintiffs. Defendants concealed the true nature of their unlawful conduct and acts in furtherance thereof, and actively concealed their activities through various other means and methods to avoid detection. Plaintiffs did not discover, and could not have discovered through the exercise of reasonable diligence, that Defendants were violating the securities laws as alleged herein until shortly before this action was commenced. As a result of the active

Case 6:12-cv-03081-ODS   Document 1   Filed 02/13/12   Page 28 of 50

concealment of the unlawful conduct by Defendants, any and all applicable statutes of limitations otherwise applicable to the allegations herein have been tolled.

COUNT III

(Violation of Section 10(b) of the 1934 Securities Act and Rule 10b-5 by all Defendants)

88. Plaintiffs reallege and incorporate herein by reference the allegations contained in the preceding and subsequent Paragraphs of this Complaint as if fully set out herein en hac verba and further allege:

89. Defendants disseminated or approved the statements specified above, which they knew were materially false and misleading in that they concealed and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

90. Defendants violated §10(b) of the 1934 Act and Rule 10b-5 in that they:

   a. Employed devices, schemes, and artifices to defraud;

   b. Omitted to state material facts necessary in order to make statements made, in light of the circumstances under which they were made, not misleading; and/or

   c. Engaged in acts, practices, and a course of business that operated as a fraud or deceit upon Plaintiffs and others similarly situated in connection with the purchases of Securities.

91. Plaintiffs have suffered damages in that, as a result of Defendants' concealment of material facts, they purchased Securities with a value far less than the amount paid. Plaintiffs would not have bought these Securities if they had been aware of the true facts that were concealed and not disclosed by Defendants.

29

92. As a direct and proximate result of Defendants' wrongful conduct, Plaintiffs have suffered damages in connection with their purchase of the Securities.

COUNT IV

(Violation of R.S.Mo. §409-003.301 by all Defendants)

93. Plaintiffs reallege and incorporate herein by reference the allegations contained in the preceding and subsequent Paragraphs of this Complaint as if fully set out herein en hac verba and further allege:

94. The entire amounts paid by each and every Plaintiff was subject to the risk of the Hilton Penthouse Convention Center Hotel enterprise to rent the Securities, branded Hilton Penthouse Convention Center Hotel rooms, at a projected rate for a projected range of days within each year. All of the economic benefits to be derived from the Security were inextricably bound to the success of the entire Hilton Hotel branded enterprise as a whole. The occupancy rates of the Security, from which Plaintiffs sought to derive rental profits, were dependent upon the success of the Hilton brand.

95. The furnishing of the amounts paid by each and every Plaintiff for the Securities purchased were induced by Defendants' omissions of material fact set forth in paragraph 62 herein above and representations which gave rise to a reasonable understanding among the Plaintiffs that a valuable benefit in the form of prospective economic benefits would accrue to Plaintiffs from the entrepreneurial or managerial efforts of others managing the Hilton Penthouse Convention Center Hotel, the Branson Landing and the Rental Program at the Hilton Penthouse Convention Center Hotel, induced Plaintiffs to purchase the Securities. The economic benefit, over and above the amounts paid for the purchase of the Securities, that Defendants' sales team promised would flow to Plaintiffs

30

from the purchase of the Securities were the primary motivation behind Plaintiffs'
purchase of the Securities. Residency was never discussed and was specifically
disallowed by the Defendants' purchase contract and other governing documents.

96. Plaintiffs did not intend to receive any right to exercise practical and/or actual control
over the managerial decisions of the Hilton enterprise. Furthermore, Plaintiffs did not
exercise any power to influence the utilization of the capital invested in the Securities.
Instead, the economic benefits that Plaintiffs were told by Defendants would flow from
the purchase of the Securities would result from the name recognition of the Hilton Hotel
brand, the strength of the rental program management, and the ability of the reservation
system of the rental program to yield income after purchase.

97. Defendants issued the Securities, which were not exempt from registration, to Plaintiffs
without abiding by the registration requirements of Missouri, did not have any
preemption there from and therefore Plaintiffs, under R.S.Mo. § 409-005.509, may
recover the consideration paid for the Securities and interest at the legal rate of this State
from the date of payment, costs and reasonable attorney's fees, less the amount of income
received on the Securities.

98. Plaintiffs who no longer own the Securities may recover damages. Damages are the
amount that would be recoverable upon a tender less the value of the Securities when the
purchaser disposed of it, plus interest at the legal rate of this State from the date of
disposition of the Securities, costs and reasonable attorney's fees determined by the court.
Tender requires only notice of willingness to exchange the Securities for the amount
specified.

COUNT V

31

(Violation of R.S.Mo. §409-005.501)

99. Plaintiffs reallege and incorporate herein by reference the allegations contained in the

preceding and subsequent Paragraphs of this Complaint as if fully set out herein en hac

verba and further allege:

100.    It is unlawful for a person, in connection with the offer, sale, or purchase of a
security,

directly or indirectly:

(1) To employ a device, scheme or artifice to defraud;
(2) To make an untrue statement of a material fact or to omit to state a material fact
necessary in order to make the statement made, in light of the circumstances under which
it is made, not misleading; or
(3) To engage in an act, practice, or course of business that operates or would operate as
    a fraud or deceit upon another person.

R.S.Mo.§ 409-005-501.

101.    Defendants, through the sales and rental management presentations of the

unregistered Securities have employed a device, scheme or artifice to defraud described

in specificity above in this Complaint and incorporated by reference herein, by making

material omissions of fact as set forth in Paragraph 62 above and false representation as

set forth herein.

102.    Defendants, further through the sales and rental management presentations of the

unregistered Securities, as described with specificity above in this Complaint and

incorporated by reference herein, made several untrue statements of material facts and/or

omitted to state material facts necessary in order to make the statements made not

misleading in the true circumstances concerning the Defendants' actual ability to forecast

or predict the profitability of participating in Defendants' rental management program

32

and the minimum rental rates, the minimum occupancy rates, and the anticipated appreciation rates of the Securities.

103.    Defendants, through the intentional omission of material facts and false and fraudulent sales and rental presentation described with specificity above, engaged in acts, practices and/or a course of business which operated as a fraud or deceit upon the Plaintiffs by inducing Plaintiffs to purchase the Securities and enter the Defendants' rental management program based on dubious predictions of economic expectations that the Defendants knew to be false at the time such predictions were made. Moreover, the Defendants knew that these statements were untrue and the omissions were material and misleading, but made them to defraud Plaintiffs.

104.    Plaintiffs did not know that the statements of material facts made to them by Defendants during the sales presentations were untrue or that there was an omission of a statement of material fact.

105.    Plaintiffs did not receive any written offer, including financial and other information necessary to correct all material misstatements or omissions in the information required to be furnished to Plaintiffs, as of the time of the sale of Securities.

106.    Defendants, pursuant to the fraudulent scheme, business practice, and on the basis of untrue material facts and omissions, issued Securities, which were not exempt from registration, to Plaintiffs without abiding by the registration requirements of Missouri and therefore Plaintiffs, under R.S.Mo. §409-005.509, may recover the consideration paid for the Securities and interest at the legal rate of this State from the date of payment, costs and reasonable attorney's fees, less the amount of income received from the Securities.

107.     Plaintiffs who no longer own the Securities may recover damages. Damages are the amount that would be recoverable upon a tender less the value of the Securities when the purchaser disposed of it, plus interest at the legal rate of this State from the date of disposition of the Securities, costs and reasonable attorney's fees determined by the court. Tender requires only notice of willingness to exchange the Securities for the amount specified.

## COUNT VI

### (Violation of R.S.Mo. Chapter 407, et seq. by all Defendants)

108.     Plaintiffs reallege and incorporate herein by reference the allegations contained in the preceding and subsequent Paragraphs of this Complaint as if fully set out herein en hac verba and further allege:

109.     Plaintiffs bring this claim under Missouri consumer protection laws, particularly R.S.Mo. §407.020, et seq., who purchased the air rights to condominium hotel room units from Defendants, and who were thus subject to Defendants' above-described deceptive, unlawful and fraudulent conduct.

110.     The air rights to condominium hotel room units, as described above, were purchased by the Plaintiffs and by other consumers similarly situated primarily for investment purposes.

111.     Defendants' contracts are set up in such a way as to make the air rights identical and in fact the same as that of a timeshare. Timeshares are merchandise pursuant to R.S.Mo. §407.630 and these sales must be treated as such.

112.     The Defendant developers of this project are former time share sales people, managers, and/or employees and have knowledge of the timeshare industry and are familiar with the sales contracts of the same.

113.     The Defendants violated their statutory duty under the Missouri Merchandising Practices Act by advertising, offering and selling the air rights to condominium-hotel room units at the Hilton Penthouse Convention Center Hotel at Branson Landing as described herein above.

114.     Further, Defendants' sales contracts are volumous pages of disclosures which they did not allow Plaintiffs sufficient time to review and reflect upon prior to signing.

115.     The Defendants violated their duty under the aforementioned statutes including but not limited to §407.020 by among other things, (a) representing that the condominium-hotel room units at the Hilton Penthouse Convention Center Hotel would earn a rate of return and/or was guaranteed, secured or protected, which Defendants knew or had reason to know was false and/or misleading; (b) making untrue statements of material facts and/or omitting to state material facts about the units at the Hilton Penthouse Convention Center Hotel; (c) failing to comply with applicable laws and regulations concerning the marketing and sale of the units; and/or (d) conducting the offering and sale of the units at the Hilton Penthouse Convention Center Hotel without all required licensing and regulatory approvals.

116.     The Defendants' actions as alleged herein were materially deceptive and constituted fraud, false pretense, misrepresentation and the concealment, suppression and omission of material facts with the intent that Plaintiffs would rely upon the fraudulent

35

misrepresentation, concealment, suppression and omission of such material facts, all in violation of the Missouri Merchandising Practices Act.

117.    Plaintiffs were injured by the many violations of the Missouri Merchandising Practices Act, and Plaintiffs have thereby been damaged in an amount to be proven at trial.

118.    Defendants' actions were intentional, willful and outrageous giving rise to punitive damages and attorney's fees authorized under the statute, R.S.Mo. §407.025.

COUNT VII

(Fraudulent Misrepresentation by All Defendants)

119.    Plaintiffs reallege and incorporate herein by reference the allegations contained in the preceding and subsequent Paragraphs of this Complaint as if fully set out herein en hac verba and further allege:

120.     Defendants made false and fraudulent misrepresentations, as described with specificity above and incorporated by reference herein, that as a result of Hilton Hotel branding, hotel reservations, room rates, occupancy rates, Defendants' rental program and the other amenities being delivered by the Branson Landing enterprise, the investment in the Securities would be profitable and the value of the Securities would appreciate, without Plaintiffs, having to provide any services or oversight of the Defendants.

121.    Defendants presented Plaintiffs with prepared documents including a document entitled "Declaration" which purported to be the condominium declaration governing the units Plaintiffs were purchasing.

36

122.     Plaintiffs also signed a document entitled "Condominium Purchase Agreement" in which paragraph twelve (12) states in part:

> Seller reserves the right to make changes in the Declaration of Condominium and By-Laws and the exhibits thereto as may be necessary to conform to applicable laws and governmental regulations, to meet requirements of lending institutions or to expedite the sale of the other units. Such changes, however, shall not substantially diminish the value of the Unit.

123.     The Declaration recorded with the Taney County Recorder of Deeds is substantially different than the version given to Plaintiffs at closing and substantially diminished the value of the units sold to Plaintiffs in that portions of the unit that were to be sold to Plaintiffs in the original version are removed from the recorded version leaving Plaintiffs with less of the actual condominium. Defendants also added charges to the Common Expense Charge in the recorded version which were not present in the version given to Plaintiffs at purchase. The Master Association is referred to in the Declaration copy given to Plaintiffs generically but in the recorded version, Convention Center Hotel Master Association, Inc. is referenced, a non-existent corporation which has charged Plaintiffs dues through the condominium owner's association. A ground lease governing the land the project is built upon is referenced in the Declaration given to Plaintiffs at closing but a Master Lease along with the date it was executed is listed in the recorded version.

124.     Defendants also failed to disclose or provide Plaintiffs with the Declaration and Covenants governing the entire Convention Center Complex which govern Plaintiffs' units as well.

125.     Defendants, and each of them, made these representations with the knowledge or belief that the representations were false or with an insufficient basis of information for making the representations.

126.     Defendants intended to induce Plaintiffs to act upon the misrepresentations by entering into the sales agreement to purchase the Securities and also entering into the rental management agreement.

127.     Plaintiffs were ignorant of the truth of the misrepresentations and concealments made by Defendants and in fact justifiably relied on the misrepresentations made by Defendants.

128.     As a direct and proximate result of Defendants' misstatements and misrepresentations of material facts, Plaintiffs entered into a written agreement for the purchase of the condominium hotel, entered into a written agreement to participate in the Defendants' rental management program, and suffered damages as more fully set forth herein above an in an amount to be proven at trial.

129.     As a result, Plaintiffs are, in the alternative, entitled to rescission of the contract, an accounting, and the return of any and all money or property given, plus interest and expenses.

130.     Defendants had actual knowledge of the fact that the representations were in fact false, and for these reasons, and because the conduct by these Defendants was malicious, oppressive and/or fraudulent, Plaintiffs are, therefore, entitled to punitive damages to make an example of and to punish these Defendants in addition to actual damages.

COUNT VIII

(Negligent Misrepresentation by All Defendants)

38

131.     Plaintiffs reallege and incorporate herein by reference the allegations contained in

the preceding and subsequent Paragraphs of this Complaint as if fully set out herein en

hac verba and further allege:

132.     Defendants supplied false guidance in discussions relating to the sale of

Defendants' condominium hotel units at the Hilton Penthouse Convention Center Hotel

as described with specificity above and incorporated by reference herein. Defendants

failed to exercise reasonable care or competence in obtaining or communicating the

information which consisted of misrepresentations, not only concerning the property

value of the condominium hotel units, but also concerning the anticipated rental value

and occupancy rate of the units, and the profitability of participating in Defendants' rental

management program. Such misrepresentations were made in the course of Defendants'

business, profession or employment, and/or in any such transaction in which Defendants

had a pecuniary interest.

133.     The misrepresentations made to Plaintiffs included the false and fraudulent

statements described above with specificity in this complaint and incorporated by

reference herein.

134.     Defendants, and each of them, made these representations negligently, and

without any reasonable basis for believing them to be true.

135.     Plaintiffs were ignorant of the truth of the misrepresentations and concealments

made by Defendants and in fact justifiably relied on the misrepresentations made by

Defendants and each of them.

136.     As a direct and proximate result of Defendants' misstatements and

misrepresentations of material facts, Plaintiffs entered into a written agreement for the

purchase of the condominium hotel unit, entered into a written agreement to participate in the Defendants' rental management program, and suffered damages as more fully set forth herein above and in an amount to be proven at trial.

137.     As a result, Plaintiffs are, in the alternative, entitled to rescission of the contract, an accounting, and return of any and all money or property given, plus interest and expenses.

COUNT IX

(Fraud in the Inducement by All Defendants)

138.     Plaintiffs reallege and incorporate herein by reference the allegations contained in the preceding and subsequent Paragraphs of this Complaint as if fully set out herein en hac verba and further allege:

139.     Plaintiffs contracted with Defendants and relied upon Defendants to provide their professional expertise and judgment with respect to the purchase of condominium hotel units at the Hilton Penthouse Convention Center Hotel. Defendants utilized an inside and outside sales team in order to make false representations to the Plaintiffs in order to induce their consent to enter into the purchase agreement and the rental management agreement. Both Defendants' inside and outside sales team had knowledge or belief that the representations were false or knowledge that it had an insufficient basis for making the representations.

140.     The material omissions and false representations made to Plaintiffs included the fraudulent statements described with specificity above and incorporated by reference herein.

141.    Defendants presented numerous false representations regarding the true economic value of such investment from Plaintiffs, despite knowing and concealing the true and correct facts of the rental values, expected rental occupancy rate of the Securities, and the amount of profits Plaintiffs would receive from participating in Defendants' rental management program.

142.    Defendants, and each of them, had a duty to disclose the true nature of all known material facts and circumstances surrounding the economic value of the Securities. Defendants had exclusive knowledge of all such material facts and such material facts were not known or reasonably accessible to Plaintiffs.

143.    The concealment of the true facts from Plaintiffs was done with the intent to induce their consent to enter into the purchase agreement and the rental management agreement.

144.    Plaintiffs justifiable reliance on statements made by Defendants was justified as Defendants purported to have professional expertise concerning the economic value of the condominium hotel units.

145.    As a result of Defendants' false representations regarding the true economic value of the condominium hotel units complained of in this complaint, Plaintiffs were unaware of the true nature of the facts concerning the true value of the condominium hotel units as economic investments.

146.    As a result of the false representations, Plaintiffs entered into a written agreement for the purchase of the condominium hotel unit, entered into a written agreement to participate in the Defendants' rental management program, and suffered damages as more fully set out herein above in an amount to be proven at trial.

147. As a result, Plaintiffs are, in the alternative, entitled to rescission of the contract, an accounting, and the return of any and all money or property given, plus interest and expenses.

148. Defendants had actual knowledge of the fact that the representations were in fact false, and for these reasons, and because the conduct by these Defendants was malicious, oppressive and/or fraudulent, Plaintiffs are therefore, entitled to punitive damages to make an example of and to punish Defendants in addition to actual damages.

COUNT X

(Fraudulent Concealment by All Defendants)

149. Plaintiffs reallege and incorporate herein by reference the allegations contained in the preceding and subsequent Paragraphs of this Complaint as if fully set out herein en hac verba and further allege:

150. Plaintiffs contracted with Defendants and relied upon Defendants to provide their professional expertise and judgment with respect to the purchase of Securities at the Hilton Penthouse Convention Center Hotel. Defendants utilized an inside and outside sales team in order to sell these units. The teams employed by Defendants concealed and/or suppressed material facts relating to the true economic value of the condominium units.

151. The material facts concealed from Plaintiffs included the fraudulent statements described with specificity above and incorporated by reference herein.

152. Defendants concealed and suppressed the material facts regarding the true economic value of such investment from Plaintiffs, despite knowing the true and correct facts regarding the Securities. The misrepresentations were made and the true and correct

42

facts concealed by Defendants in order to intentionally induce the Plaintiffs' consent to purchase the condominium unit and enter into the rental management agreement with Defendants.

153.     Defendants, and each of them, had a duty to disclose the true nature of all known material facts and circumstances surrounding the rental values, expected rental occupancy rate, and relevant material facts described above and incorporated by reference herein. Defendants had exclusive knowledge of all such material facts and such material facts were not known or reasonably accessible to Plaintiffs.

154.     Plaintiffs' reliance on statements made by Defendants, and each of them, was justified as Defendants purported to have professional expertise concerning the economic value of the condominium hotel units.

155.     As a result of Defendants' intentional misrepresentation of material facts regarding the true economic value of the condominium hotel units complained of in the complaint, Plaintiffs were unaware of the true nature of the facts concerning the true value of the condominium hotel units as economic investments. Had Plaintiffs been aware of the material facts concealed by Defendants, Plaintiffs would not have entered into any agreements with the Defendants.

156.     As a result of the concealment alleged, Plaintiffs entered into a written agreement for the purchase of the Securities, entered into a written agreement to participate in the Defendants' rental management program, and suffered damages as more fully set out herein above and in an amount to be proven at trial.

157.     As a result, Plaintiffs are, in the alternative, entitled to rescission of the contract, an accounting, and the return of any and all money or property given, plus interest and expenses.

158.     Defendants had actual knowledge of the fact that the representations were in fact false, and for these reasons, and because the conduct by these Defendants was malicious, oppressive and/or fraudulent, Plaintiffs are, therefore, entitled to punitive damages to make an example of and to punish these Defendants in addition to actual damages.

COUNT XI

(Breach of Fiduciary Duty by All Defendants)

159.     Plaintiffs reallege and incorporate herein by reference the allegations contained in the preceding and subsequent Paragraphs of this Complaint as if fully set out herein en hac verba and further allege:

160.     Plaintiffs and Defendants have a fiduciary relationship in that the Plaintiffs purchased units from Defendants and signed agreements with Defendants whereby Defendants would, unsupervised by Plaintiffs, rent out and manage their units as hotel rooms as part of the Hilton Penthouse Convention Center Hotel and in return, Plaintiffs would receive income from the rental of the units.

161.     Defendants have breached their duty to Plaintiffs by among other things plead in this petition by not renting Plaintiffs units on a rotational basis and overcharging Plaintiffs for expenses.

162.     Defendants' actions have caused Plaintiffs harm in that they have been monetarily damaged by Defendants' breach of their fiduciary duty.

163.     As a result, Plaintiffs are entitled to rescission of the contract, an accounting, and the return of any and all money or property given, plus interest and expenses.

## COUNT XII

(Unlawful Transaction of Business against Richard E. Huffman)

164.     Plaintiffs reallege and incorporate herein by reference the allegations contained in the preceding and subsequent Paragraphs of this Complaint as if fully set out herein en hac verba and further allege:

165.     Defendant Richard E. Huffman purported the existence of Convention Center Hotel Master Association, Inc. by and through documents including the Penthouse Condominium Declaration filed with the Taney County, Missouri Recorder of Deeds.

166.     The Missouri Secretary of State has no record of Convention Center Hotel Master Association, Inc. ever existing or being incorporated. See Exhibit "3".

167.     Richard E. Huffman, using the non-existent entity, Convention Center Hotel Master Association, Inc., has charged and collected Plaintiffs money through the Penthouse Condominium Association, Inc.

168.     The Convention Center Hotel Master Association, Inc. has charged Plaintiffs and Plaintiffs have paid at least $56,000.00.

169.     Richard E. Huffman is personally liable for illegally transacting business through the Convention Center Hotel Master Association, Inc. without first registering said entity with the Missouri Secretary of State's office, pursuant to R.S.Mo. §417.200 and R.S.Mo. §351.053.

170.     Plaintiffs are entitled to a refund of all funds paid to the non-existent entity, Convention Center Hotel Master Association, Inc.

171.    Plaintiffs request Defendant Richard E. Huffman be penalized under the Missouri statues for his illegal conduct of business pursuant to R.S.Mo. §351.715.

172.    Plaintiffs request that all actions and transactions of the Convention Center Hotel Master Association, Inc. be declared void and for what other relief the Court deems just and proper.

COUNT XIII

(Breach of Contract and Unjust Enrichment Against Hilton Worldwide, Inc.)

173.    Plaintiffs reallege and incorporate herein by reference the allegations contained in the preceding and subsequent Paragraphs of this Complaint as if fully set out herein en hac verba and further allege:

174.    Defendant, Hilton Worldwide, Inc., manages the rental program in which the Plaintiffs' units are enrolled.

175.    Defendant Branson Landing Hotel, LLC engaged Hilton Worldwide, Inc. as the exclusive rental agent of the Plaintiffs' hotel rooms at the Hilton Penthouse Convention Center Hotel.

176.    Plaintiffs in turn, entered into the Unit Management Agreement with Defendant Branson Landing Hotel, LLC to rent Plaintiffs' hotel rooms at the Hilton Penthouse Convention Center Hotel.

177.    Defendant, Hilton Worldwide, Inc., has a reservation service located at the Hilton Penthouse Convention Center Hotel where the public makes reservations and rents Plaintiffs' and Defendants' hotel rooms.

178.    Defendant, Hilton Worldwide, Inc., has a reward program known as Hilton Honors in which customers may earn reward points through various methods such as

staying at a facility owned or managed by Hilton. Hilton Penthouse Convention Center Hotel is one such property.

179.     As part of the Hilton Honors program, guests can earn free or reduced rate stays at a Hilton owned or managed property.

180.     Defendant, Hilton Worldwide, Inc., offers members of the Hilton Honors program free or reduced rate rooms at Hilton Penthouse Convention Center Hotel and allows those guests to stay in Plaintiffs' units for a free or reduced rate without Plaintiffs' prior consent.

181.     When Hilton Honors members stay in Plaintiffs' units, Plaintiffs absorb all costs and are given a significantly reduced rate for the unit of $30.00 before management fees and the fifty percent split with Defendants leaving the Plaintiff unit owner with roughly $13.00 before the Plaintiff pays utilities, taxes, association dues, insurance and any mortgage.

182.     There is no arrangement between Hilton Worldwide, Inc. and Plaintiffs by which Plaintiffs agreed to accept this significantly reduced rate nor does this scheme appear in the Unit Management Agreement between.

183.     Plaintiffs must pay the utilities, maintenance, association dues, taxes and insurance on their unit when Hilton Worldwide, Inc. rents their unit to a Hilton Honors member and only receives $13.00 from the night's stay. Plaintiffs are essentially funding the Hilton Honors program without their prior approval or consent.

184.     Hilton Worldwide, Inc. is profiting from repeat business of Hilton Honors members at the subject property and their other properties around the world while Plaintiffs pay for the costs of the units at the Hilton Penthouse Convention Center Hotel.

47

185.     Defendant Hilton Worldwide, Inc. has been unjustly enriched by their actions in granting access to Plaintiffs' units to the Hilton Honors members at no cost to Defendant Hilton Worldwide, Inc.

186.     Defendant Hilton Worldwide, Inc. has breached its contract with Defendant Branson Landing Hotel, LLC and in turn with Plaintiffs by engaging Plaintiffs' units in the Hilton Honors program without their consent.

187.     Plaintiffs have been damaged by Defendant Hilton Worldwide, Inc.'s actions in an amount to be determined at trial.

## REQUEST AND PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that the Court enter judgment in their favor and against Defendants as follows:

## PRAYER FOR RELIEF

Plaintiffs pray for judgment and relief against Defendants as follows:

1. For damages according to proof;

2. For interest on all damages as allowed by the laws of the State of Missouri according to proof at time of trial;

3. For a temporary restraining order, permanent or temporary prohibitory or mandatory injunction or a writ of prohibition or mandamus;

4. For the imposition of a civil penalty of not more than $2,500.00 for a single violation or $100,000.00 for multiple violations in a single proceeding or series of related proceedings;

5. For the issuance of a declaratory judgment;

6. For an order of rescission and restitution to investors;

7. For an order for an accounting;

8. For an order of punitive damages;

9. For the appointment of a receiver or conservator for the Defendants' assets;

10. For an order of payment of the division's investigative costs;

11. For an order of such other relief as the court deems just;

12. For consideration paid for the Securities and interest at the legal rate of Missouri from the date of payment plus all expenses incurred, costs and reasonable attorney's fees, less the amount of income received on the Securities;

13. For damages for each Plaintiff who no longer owns the Securities in the amount that would be recoverable upon a tender less the value of the Securities when the Plaintiff disposed of it, plus interest at the legal rate of this State from the date of disposition of the Securities, costs and reasonable attorney's fees determined by the court. Tender requires only notice of willingness to exchange the Securities for the amount specified; and

14. For an order for costs and attorneys' fees as allowed by law.

Dated: February 13, 2012

Respectfully Submitted,

**MORRISSEY LAW OFFICE, LLC**

By:___/s Joseph A. Morrissey_____
Joseph A. Morrissey, MO Bar# 30202
Anna Morrissey MO Bar# 57756
114 W. Adams
Branson, Missouri 65616
Phone: (417)334-7581
Fax: (417)334-2071
ATTORNEYS FOR PLAINTIFFS

Respectfully Submitted,

**MORRISSEY LAW OFFICE, LLC**

49

By: ___/s Anna M. Morrissey_____
Joseph A. Morrissey, MO Bar# 30202
Anna Morrissey MO Bar# 57756
114 W. Adams
Branson, Missouri 65616
Phone: (417)334-7581
Fax: (417)334-2071
ATTORNEYS FOR PLAINTIFFS