IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI

| | |
|---|---|
| CHRISTOPHER AND PAULA ANDREW, et al. ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| vs. ) | Case No. 6:12-cv-03081-ODS |
| ) | |
| BLH Development Company, LLC ) | JURY TRIAL DEMANDED |
| A Missouri Limited Liability Company, et al. ) | |
| ) | |
| Defendants. ) | |
| ) | |
| ) | |

## FIRST AMENDED COMPLAINT

COME NOW, Plaintiffs, Christopher and Paula Andrew, Andrew and Glenda Beach,

Otto D and Jennifer Brewer, Richard G. and Kimberly A. Brull, Bernard Childs, David A. and

Therese M. Childs, Albert A. and Karin P. Dalkey, James P. and Theresa F. Dodson, Evans

Renovations Mo, LLC, a Missouri LLC, Green 1991 Family Trust ½ Int & Michael Greenberg ½

Jack K. & Lee A. Green (Greenberg) Trustees, Ricki Holmes, Ira Plus Southwest, LLC FBO

Melanie Breneman IRA 75% % Larry & Melanie Breneman 25%; a Texas LLC, Dennis and

Deanne L Korycki, Lake View & Classic Properties, LLC C/O Barbara Mishkin, L D Valley

View #5 Family Limited Partnership, Manubay Teodoro A Living Trust 6/10/1986, Anthony J.

and Julie A. Marschner, Lawrence I. and Teresa L. Miller, Harold Leroy and Marjorie Minatre, J.

Ronald and Faye Montgomery, Paradise Chateau Trust 11/30/2007 C/O  Marilyn K. Beck,

Rabaza Dionisio & Eliane Gras C/O John Strand, Ragat Family 2008 Trust 07/10/2008 C/O

Gary Ragat, Elizabeth W. Raidel Revocable Trust 8/9/1999, Chad and Amy Register, Chris and

Tracy Robinson, Stanley K. and Norma Ryan, Patrick N. and Elizabeth A. Sears, Gregory M.

and Stephanie G Smith, Matthew G. and Trenda L. Somers, Mark and Susan Stephens, Sunbelt

1

Capital Ventures INC, Tax Free Strategies LLC, FBO Craig Lawrence Wheeler IRA 59086, Tax

Free Strategies LLC, C/O Dale Hicks, (collectively "Plaintiffs"), against Defendants, BLH

Development Company, LLC a Missouri Limited Liabilty Company, Branson Landing Hotel,

LLC dba the Hilton Branson Convention Center Hotel; A Missouri Limited Liability Company,

BLR Downtown Realty, LLC dba Branson Landing Realty a Missouri Limited Liability

Company, Richard E. Huffman, individually for Convention Center Hotel Master Association,

INC., Hilton Worldwide, Inc., a Delaware Corporation, HCW, L.L.C., a Missouri LLC, HCW

Management Consultants, LLC., a Missouri LLC, and HCW Development Company, LLC, a

Missouri LLC, (collectively "Defendants"), and allege, based upon information and belief,
except where otherwise stated as

follows:

## I.     THE PARTIES

1.  Plaintiffs Christopher and Paula Andrew (husband and wife) are residents of Joplin,
    Missouri, who purchased Security number 1201 for $439,900.00 on September 13, 2005.
    The certification pursuant to the federal securities laws for Plaintiffs Andrew is attached
    hereto as part of Exhibit #1.

2.  Plaintiffs Andrew and Glenda Beach (husband and wife) are residents of Springfield,
    Missouri, who purchased Security number 1132 for $187,900.00 on September 8, 2007.
    The certification pursuant to the federal securities laws for Plaintiffs Beach is attached
    hereto as part of Exhibit #1.

3.  Plaintiffs Otto D. and Jennifer Brewer (husband and wife) are residents of Spanish Fort,
    Alabama, who purchased Security number 1102 for $199,900.00 on December 3, 2005.
    The certification pursuant to the federal securities laws for Plaintiffs Brewer is attached
    hereto as part of Exhibit #1.

2

4. Plaintiffs Richard G. and Kimberly A. Brull (husband and wife) are residents of North Kansas City, Missouri, who purchased Security number 1024 for $297,900.00 on September 7, 2007. The certification pursuant to the federal securities laws for Plaintiffs Brull is attached hereto as part of Exhibit #1.

5. Plaintiff Bernard Childs is a resident of Key Largo, Florida, who purchased Securities numbered 1009, 1117, 909 and 911 on October 19, 2007 for a total investment of $1,173,600.00. The certification pursuant to the federal securities laws for Plaintiff Childs is attached hereto as part of Exhibit #1.

6. Plaintiffs David A. and Therese M. Childs (husband and wife) are residents of Dearborn Heights, Michigan, who purchased Security number 1001 for $327,900.00 on September 14, 2007. The certification pursuant to the federal securities laws for Plaintiffs Childs is attached hereto as part of Exhibit #1.

7. Plaintiff Albert A. and Karin P. Dalkey is a resident of Colfax, North Carolina, who purchased Securities numbered 909 and 902 on November 13, 2007 for a total investment of $369,800.00. The certification pursuant to the federal securities laws for Plaintiff Dalkeys is attached hereto as part of Exhibit #1.

8. Plaintiffs James P. and Theresa F. Dodson (husband and wife) are residents of Shreveport, Louisiana, who purchased Security number 1018 for $297,900.00 on August 31, 2007. The certification pursuant to the federal securities laws for Plaintiffs Dodson is attached hereto as part of Exhibit #1.

9. Plaintiff Evans Renovations Mo, LLC, a Missouri LLC; who purchased Security number 1011 for a purchase price of $250,000.00 on January 16, 2009. The certification pursuant

to the federal securities laws for Plaintiff Evans Renovations MO, LLC, is attached hereto as part of Exhibit #1.

10. Plaintiff Green 1991 Family Trust ½ Int & Michael Greenberg ½ Jack K & Lee A Green (Greenberg) Trustees is a resident of Las Vegas, Nevada, who purchased Security numbered 1017 for a purchase price of $327,900.00 on September 14, 2007. The certification pursuant to the federal securities laws for Plaintiff Green 1991 Family Trust ½ Int & Michael Greenberg ½ Jack K & Lee A Green (Greenberg) Trustees is attached hereto as part of Exhibit #1.

11. Plaintiff Ricki Holmes is a single person and is a resident of Branson, Missouri, who purchased Security number 915 for the purchase price of $189,900.00 on November 14, 2005. The certification pursuant to the federal securities laws for Plaintiff Ricki Holmes is attached hereto as part of Exhibit #1.

12. Plaintiff Ira Plus Southwest, LLC FBO Melanie Breneman IRA 75% % Larry & Melanie Breneman 25%; a Texas LLC purchased Security number 908 for a purchase price of $169,000.00 on September 17, 2007. The certification pursuant to the federal securities laws for Plaintiff Ira Plus Southwest, LLC FBO Melanie Breneman IRA 75% % Larry & Melanie Breneman 25%, is attached hereto as part of Exhibit #1.

13. Plaintiffs Dennis and Deanne L. Korycki (husband and wife) are residents of Oak Forest, Illinois, who purchased Security number 907 for $189,000.00 on August, 2007. The certification pursuant to the federal securities laws for Plaintiffs Korycki is attached hereto as part of Exhibit #1.

14. . Plaintiff Lake View & Classic Properties, LLC C/O Barbara Mishkin; a Missouri LLC purchased Security number 1109 for a purchase price of $207,900.00 on December 26,

4

2007. The certification pursuant to the federal securities laws for Plaintiff Lake View & Classic Properties, LLC C/O Barbara Mishkin, is attached hereto as part of Exhibit #1.

15. Plaintiff L D Valley View #5 Family Limited Partnership; is a residents of Bluffton, South Carolina, purchased Security number 917 for a purchase price of $271,915.00 on October 16, 2008. The certification pursuant to the federal securities laws for Plaintiff L D Valley View #5 Family Limited Partnership, is attached hereto as part of Exhibit

16. Plaintiff Manubay Teodoro A Living Trust 6/10/1986 is a resident of Kennet, Missouri, purchased Security numbered 1123 for a purchase price of $335,900.00 on November 6, 2005. The certification pursuant to the federal securities laws for Plaintiff Manubay Teodoro A Living Trust 6/10/1986 is attached hereto as part of Exhibit #1.

17. Plaintiffs Anthony J. and Julie A. Marschner (husband and wife) are residents of Milwaukee, Wisconsin, who purchased Security number 1034 and 1036 for a total investment of $475,800.00 on September 5, 2007. The certification pursuant to the federal securities laws for Plaintiffs Marschner is attached hereto as part of Exhibit #1.

18. Plaintiffs Lawrence I. and Teresa L. Miller (husband and wife) are residents of Kirksville, Missouri, who purchased Security number 1105 for $205,000.00 on November 15, 2007. The certification pursuant to the federal securities laws for Plaintiffs Miller is attached hereto as part of Exhibit #1.

19. Plaintiffs Harold Leroy and Marjorie Minatre (husband and wife) are residents of Stockton, California, who purchased Security number 1142 and 1007 for a total investment of $531,900.00 on October 15, 2007. The certification pursuant to the federal securities laws for Plaintiffs Minatre is attached hereto as part of Exhibit #1.

20. Plaintiffs J. Ronald and Faye Montgomery (husband and wife) are residents of Longmont, Colorado, who purchased Security number 1121 for $207,900.00 on August 29, 2007. The certification pursuant to the federal securities laws for Plaintiffs Montgomery is attached hereto as part of Exhibit #1.

21. Plaintiff Paradise Chateau Trust 11/30/2007 C/O Marilyn K. Beck is a resident of Kansas City, Missouri, purchased Security numbered 1105 for a purchase price of $199,900.00 on October 30, 2007. The certification pursuant to the federal securities laws for Plaintiff Paradise Chateau Trust 11/30/2007 C/O Marilyn K. Beck is attached hereto as part of Exhibit #1.

22. Plaintiffs Rabaza Dionisio & Eliane Gras C/O John Strand (individuals) are residents of Mountain Home, Arkansas, who purchased Security number 1233 for $449,900.00 on December 27, 2005. The certification pursuant to the federal securities laws for Plaintiffs Rabaza Dionisio & Eliane Gras C/O John Strand is attached hereto as part of Exhibit #1.

23. Plaintiff Ragat Family 2008 Trust 07/10/2008 C/O Gary Ragat is a resident of Oceanside, California, purchased Security numbered 1021 for a purchase price of $199,000.00 on July 29, 2008. The certification pursuant to the federal securities laws for Plaintiff Ragat Family 2008 Trust 07/10/2008 C/O Gary Ragat is attached hereto as part of Exhibit #1.

24. Plaintiff Elizabeth W. Raidel Revocable Trust 8/9/1999 is a resident of Springfield, Missouri, purchased Security numbered 906 for a purchase price of $289,900.00 on August 28, 2007. The certification pursuant to the federal securities laws for Plaintiff Elizabeth W. Raidel Revocable Trust 8/9/1999 is attached hereto as part of Exhibit #1.

25. Plaintiffs Chad and Amy Register (husband and wife) are residents of Paragould, Arkansas, who purchased Security number 1130 for $299,900.00 on August 30, 2007.

The certification pursuant to the federal securities laws for Plaintiffs Register is attached hereto as part of Exhibit #1.

26. Plaintiffs Chris and Tracy Robinson (husband and wife) are residents of Imperial, Missouri, who purchased Security number 934 for $169,900.00 on November 26, 2005. The certification pursuant to the federal securities laws for Plaintiffs Robinson is attached hereto as part of Exhibit #1.

27. Plaintiffs Stanley K. and Norma Ryan (husband and wife) are residents of Blue Mound, Illinois, who purchased Security number 1136 for $250,000.00 on December 18, 2008. The certification pursuant to the federal securities laws for Plaintiffs Ryan is attached hereto as part of Exhibit #1.

28. Plaintiffs Patrick N. and Elizabeth A. Sears (husband and wife) are residents of La Mesa, California, who purchased Security number 1224 for $199,900.00 on June 17, 2006. The certification pursuant to the federal securities laws for Plaintiffs Sears is attached hereto as part of Exhibit #1.

29. Plaintiffs Gregory M. and Stephanie G. Smith (husband and wife) are residents of Chesterfield, Missouri, who purchased Security number 1030 for $297,000.00 on September 27, 2007. The certification pursuant to the federal securities laws for Plaintiffs Smith is attached hereto as part of Exhibit #1.

30. Plaintiffs Matthew G. and Trenda L. Somers (husband and wife) are residents of Morrison, Colorado, who purchased Security number 1035 for $199,900.00 on September 21, 2007. The certification pursuant to the federal securities laws for Plaintiffs Somers is attached hereto as part of Exhibit #1.

31. Plaintiffs Mark and Susan Stephens (husband and wife) are residents of Bolivar, Missouri, who purchased Security number 901 for $319,900.00 on August 27, 2007. The certification pursuant to the federal securities laws for Plaintiffs Stephens is attached hereto as part of Exhibit #1.

32. Plaintiff Sunbelt Capital Ventures, Inc. are residents of Roland, Oklahoma who purchased Security number 916 for a purchase price of $220,000 on January 16, 2009. The certification pursuant to the federal securities laws for Plaintiff Sunbelt Capital Ventures Inc, is attached hereto as part of Exhibit #1.

33. Plaintiff Tax Free Strategies, LLC, FBO Craig Lawrence Wheeler IRA 59086; a Florida LLC purchased Security numbers 1108 and 919 for a total purchase price of $387,800.00 on May 31, 2007 and March 10, 2006, respectively. The certification pursuant to the federal securities laws for Plaintiff Tax Free Strategies, LLC, FBO Craig Lawrence Wheeler IRA 59086, is attached hereto as part of Exhibit #1.

34. Plaintiff Tax Free Strategies LLC, C/O Dale Hicks; a Florida LLC who purchased Security number 1206 for a purchase price of $200,000.00 on September 24, 2007. The certification pursuant to the federal securities laws for Plaintiff Tax Free Strategies LLC, C/O Dale Hicks, is attached hereto as part of Exhibit #1.

35. Defendant, BLH Development Company, LLC, is a Missouri LLC with its principle place of business in Branson, Taney County, Missouri. At all times relevant hereto, BLH Development Company, LLC was the Declarant of the Penthouse Condominium at Hilton Branson Convention Center, the project commonly known as Hilton Penthouse Convention Center Hotel. BLH Development Company, LLC was the initial owner of all units now owned by Plaintiffs at the development. BLH Development Company, LLC is

also the owner of 192 hotel rooms currently competing with Plaintiffs' units at the development.

36. Defendant, Branson Landing Hotel, LLC, dba the Hilton Branson Convention Center Hotel is a Missouri LLC with its principle place of business in Branson, Taney County, Missouri. At all relevant times hereto, Branson Landing Hotel, LLC was project developer or hotel owner, promoter and advertiser of the Hilton Penthouse Convention Center Hotel who engaged Hilton Worldwide, Inc. as the manager of the Hilton Penthouse Convention Center Hotel.

37. Defendant, Hilton Worldwide, Inc., is a Delaware corporation doing business through its employees, agents and entities in Branson, Taney County, Missouri. At all times relevant hereto, Hilton Worldwide, Inc. was the property manager of the Hilton Penthouse Convention Center Hotel, managing the nightly rentals of Plaintiffs' Securities.

38. Defendant, HCW, LLC is a Missouri LLC with its principle place of business in Branson, Taney County, Missouri. At all relevant times hereto, was the overarching entity developing the Branson Landing Enterprise and the developer of the Hilton Penthouse Convention Center Hotel.

39. Defendant, HCW Management Consultants, LLC is a Missouri LLC with its principle place of business in Branson, Taney County, Missouri. At all relevant times hereto, have been managing the condominium owner's association for the Hilton Penthouse Convention Center Hotel.

40. Defendant, BLR Downtown Realty, LLC is a Missouri LLC with its principle place of business in Branson, Taney County, Missouri. At all times relevant hereto, BLR

9

Downtown Realty, LLC was the main real estate sales agent for the condominium hotel units sold to Plaintiffs.

41. Defendant, Richard E. Huffman, individual, is the alter ego of Convention Center Hotel Master Association, Inc. a non-existent corporation. See Exhibit "3". At all times relevant hereto, Convention Center Hotel Master Association, Inc. purports to be the master association over the Hilton Penthouse Convention Center Hotel and charges and collects dues from Plaintiffs.

## II.     JURISDICTION AND VENUE

42. The federal law claims asserted arise under Section 10(b) of the Securities Exchange Act of 1934 ("1934 Act"), Rule 10-b5 promulgated thereunder, Section 12 of the Securities Act of 1933 Act ("1933 Act"). Jurisdiction is conferred by Section 27 of the 1934 Act and Section 22 of the 1933 Act. Venue in the United States District Court for the Western District of Missouri is proper under Section 27 of the 1934 Act and Section 22 of the 1933 Act.

## III.     STATUTE OF LIMITATIONS

43. All applicable statute of limitations of state and federal law have been tolled until Plaintiffs discovery of either the facts that lead to the cause of action accruing or the actual accrual of the cause of action.

44. Many Plaintiffs made purchase of the unit/securities pre-construction.

45. Defendants began selling the unit/securities in 2005 and the hotel did not open until late 2007.

46. When Plaintiffs signed Contract Purchase Agreements (CPA) they were relying solely upon what they were being told by Defendants' sales agents as construction had not been completed.

47. The Declaration of the Penthouse Condominiums was not recorded until August 21, 2007.

48. The transactions Plaintiffs were entering into were not complete until they signed the Unit Management Agreements (UMA) just prior to the hotel opening in late 2007.

IV.     NATURE OF THE ACTION

49. This Complaint involves a scheme among the Defendants by which Plaintiffs were illegally and fraudulently induced into purchasing the air rights to condominium-hotel room units as investment securities (the "Securities") at the Hilton Branson Convention Center Hotel known as the Penthouse ( "Penthouse") in 2005, 2006, 2007, 2008, & 2009.

50. The project is referred to as the Hilton Penthouse Convention Center Hotel.

51. In addition, Defendants, specifically Richard E. Huffman, engaged in the unlawful practice of business by charging Plaintiffs through the Penthouse Condominium Owners' Association, Inc. thousands of dollars per year which were paid to Convention Center Hotel Master Association, Inc. a corporation which is not registered to do business in the State of Missouri.

52. Defendants, specifically Hilton Worldwide, Inc., has engaged in business practices by which it rents Plaintiffs' hotel rooms to the public free of charge or at a reduced rate to the customer through the Hilton Honor's Program, pays the Plaintiff, unit owner, roughly thirteen dollars and the unit owner incurs all costs including utilities, taxes, insurance and

other service fees resulting in a net loss to the Plaintiff without Plaintiffs contractual consent.

53. Plaintiffs all acquired these Securities beginning in 2005 with the transfer of the title of the Securities from Defendants to Plaintiffs without first registering the certificate of sale of the Securities as a security as required by law and without being exempt therefrom. The air rights to the hotel condominium units are securities because:

    a. Plaintiffs invested their money in the condominium unit the value of which is entirely dependent upon the success or failure of the Branson Landing enterprise;

    b. Defendants' sales promotions of the investment in the hotel room in conjunction with the contemporaneous offer of a rental program reasonably led to the understanding that a valuable benefit, over and above the initial payment for the physical air rights to the hotel room, would accrue to the Plaintiffs as a result of the operation of the hotel as a Hilton branded common enterprise pursuant to the Hilton nightly rental program; and

    c. Plaintiffs, as owners of shares in the enterprise, by investing with the Hilton rental program, did not receive and did not wish to receive any right to manage or exercise control over the decisions of the Hilton enterprise and expectation of profits are solely derived from the efforts of that third party.

54. Defendants, specifically BLR Downtown Realty, LLC, made specific revenue projections and offerings of a rental program to Plaintiffs during the sales presentation.

55. The Defendants' marketing of the Securities omitted material facts and represented that the Securities would generate a substantial amount of revenue to each purchaser. Defendants, through their sales teams, gave sales presentations to potential purchasers

which heightened purchasers expectations of a substantial economic benefit of the net rental income to be made from the Securities branded as the Hilton Penthouse Convention Center Hotel through the Hilton Rental Program. The sales presentations used written material along with sales discussions that presented, *inter alia*,;

    a. a booklet containing occupancy projections, competitive comparisons with other hotel rentals, as well as income projections based on occupancy projections;

    b. a projection of anticipated rental rates of the Securities branded as Hilton hotel rooms;

    c. competitive comparisons of rental income projections of the Securities branded as Hilton hotel rooms as compared to similar hotel rooms in the area; and

    d. projections of future occupancy rates of the Securities branded as Hilton hotel rooms.

Defendant's representations were not limited to offering the rental program as part of the Hilton Penthouse Convention Center Hotel enterprise but Defendant's marketing strategy based the sale of the Securities as part of the Hilton Penthouse Convention Center Hotel enterprise's goal, to generate a revenue split for investors by using the Hilton rental program to rent the Securities while intentionally omitting material facts to Plaintiffs.

56. The portions of Defendants' marketing scheme that emphasized the economic benefit from the rental of the Securities as represented by the Hilton branded hotel rooms as part of the Hilton Penthouse Convention Center Hotel enterprise went above and beyond simply mentioning that a rental program was offered by Defendant. These rental revenue discussions along with written representations were the centerpiece of the sales presentation and took place as part of the offering and sale. The Plaintiffs' decision to

enter into the Hilton branded hotel room rental program was not reached independently

of the decision to purchase the Securities, as the Hilton branded hotel room rental

program was an integral part of the purchase of the Securities. The Hilton branded hotel

room was part of the Hilton Penthouse Convention Center Hotel enterprise and was

represented as such by the Defendants.

57. In order to purchase the Securities, the Plaintiffs individually entered into investment

contracts with the Defendants whereby Plaintiffs agreed to pay to Defendants a certain

sum for the Securities at the closing, at which point the Securities were transferred to

Plaintiffs.

58. The amounts Plaintiffs paid to purchase their Securities were subjected to the risks of the

Hilton Penthouse Convention Center Hotel enterprise to rent the rooms at a projected rate

for a projected number of days each year. The enterprise of the Hilton Penthouse

Convention Center Hotel consists of: (a) the rental program; (b) the Penthouse Hotel; and

(c) other Hilton Branded amenities such as dining, pool, work out facilities, and retail.

The rental program places the Plaintiffs' Securities into the hotel's room inventory to be

used as luxury suites by Defendants. As a result of the rental program, Plaintiffs have no

mechanism by which to control the rental process or their unit.

59. Defendants did not disclose prior to Plaintiffs' purchase that the nightly rental rates of

Defendants' hotel rooms that were competing with Plaintiffs' hotel rooms would be

offered to the general public at desperate rates with Defendants' rooms averaging $50.00

to $150.00 less per night than Plaintiffs' rooms.

60. Defendants' sales teams falsely represented to Plaintiffs that the rental program would be

arranged for the rental of Plaintiffs' units whereby the owner of the unit would receive

14

50% of the rental revenue and Defendants would receive 50% of the rental revenue. The true facts of the situation is that Defendants receive their 56% of the rental revenue and Plaintiffs are credited with their 44% (less the 4% of the gross revenue that is withheld for a reserve fund [which calculates to 9% of the unit owners' net revenue]) but Plaintiffs receive little or no income from the rental revenue due to the previously undisclosed costs Plaintiff must pay for that Defendant is not responsible for. As part of the scheme, Defendants charged the Plaintiffs fees which significantly reduce Plaintiffs' share of the revenue. Defendants also failed to share with Plaintiffs 100% of the revenue which was produced as a result of the rental of Plaintiffs' units. When an owner unit is rented, the revenues produced from the room service, internet fees, pay per view television, income from the mini-bar, income from grocery service, and other common elements of the Hilton Penthouse Convention Center Hotel which were used by the renter were not shared with the Plaintiff. Solely out of Plaintiffs' share of revenue, Plaintiffs pay 100% of all other additional expenses not revealed until after the purchase agreement and rental agreements were signed. These additional charges include a monthly linen fee, smoke alarm battery replacement fee, biannual deep cleaning fee, service fees and commissions, hotel rental income shares and association dues, not including property taxes and insurance. The Defendants receive in whole or in part all of these fees. The additional fees reduced Plaintiffs' share of the revenue in most cases to zero and in some cases to a loss in the range of over $20,000.00 per year.

61. During the sales presentations, Defendants touted the amount of profits that Plaintiffs would receive from the revenue generated by the rental of the Securities through Defendants' rental program. Defendants, however, failed to mention the double dip

resulting from the front end fees and charges paid by Plaintiffs only reducing the Plaintiff's share of the rental revenue and the back end revenue split again reducing Plaintiff's share of the revenues. As a result, Plaintiffs receive no more than 30% of the revenues before payment of taxes, insurance and loan charges rather than the 50% as represented by Defendants. Since the fees are assessed monthly regardless of whether there is any revenue, the actual percentage received by Plaintiffs after payment of fees can drop substantially as gross revenues decline as a result of reduced occupancy and/or room rates. Prior to the purchase, Plaintiffs were presented with a document entitled "Rental Program, General Summary and Commonly Asked Questions" which states in part eleven that the expenses are not expected to exceed ten percent of the published rack room rate, a gross misrepresentation. See Exhibit "2".

62. At all relevant times hereto, Defendants operated the Hilton Penthouse Convention Center Hotel in Missouri and sold the Securities to purchasers in Missouri and other states. Most offers to purchase or sell the Securities between Plaintiffs and Defendants took place in Branson, Missouri and were governed by Missouri law. Some purchases took place at the purchaser's home or in a location in the purchaser's home town but the documents reflect the transactions are to be governed by Missouri law.

63. All of the Securities sold to Plaintiffs by Defendants were sold pursuant to substantially the same marketing strategy of fraudulently raising the potential buyer's expectation of substantial economic benefits from the purchase and ownership of the Securities branded as part of the Hilton enterprise and at the same time concealing the true facts. In every sale that was made of Securities to the Plaintiffs, Defendants uniformly misrepresented

the extent of the economic benefit that would be generated from the ownership of the Securities, as Hilton Branded Securities, and uniformly concealed material facts.

64. As more particularly described herein, the Securities were sold and offered in conjunction with one or more of the following three factors:

    a.  Emphasis on economic benefits to the purchaser to be derived from the managerial efforts of the promoter, or a third party designated or arranged for by the promoter, from rental of the units;

    b.  The offering of participation in a rental management program; or

    c.  The offering of a rental or similar arrangement whereby the owner must hold his unit available for rental for any part of the year, must use an exclusive rental agent or is otherwise materially restricted in his occupancy or rental of his unit.

65. In this suit, Plaintiffs seek rescission as well as equitable relief, including declaratory, injunctive, restitutionary and other equitable monetary relief, and damages as set forth more fully below.

## V.    THE SCHEME

66. This action involves a scheme by the Defendants independently and acting in concert as a single business enterprise to develop, control and operate a massive hotel project through funds derived from the sale of investment contract Securities to passive public investors and thereby recoup enormous profits through the development and operation of the hotel, as well as the satisfaction of Branson Landing's goal of creating a vast hotel complex to provide customers for the Branson Landing's restaurants and other commercial and entertainment businesses without incurring any cost to own and operate the Hilton Penthouse Convention Center Hotel. In order to avoid disclosing facts that would have

17

exposed the negative aspects of the investment, Defendants intentionally and knowingly disguised their sale of these investment contract Securities as a real estate transaction, for the purpose of avoiding the requirement of both state and federal laws and regulations that require (a) honest and complete disclosure to investors; (b) just and honorable conduct by those who sell investments; (c) registration of the securities being sold and the incumbent disclosure involved therewith; as well as (d) the registration and qualification of the entities and individuals selling investment contract Securities.

67. As a result of this scheme to cheat and defraud Plaintiffs and similarly situated investors, Defendants were able to reap millions of illegal profits, by concealing from the unsuspecting investors the true nature of the investment scheme they had been lured into and at the same time distribute compensation and proceeds of that scheme to themselves and their confederates without disclosure. Through this scheme, Defendants were able to conceal from their investors the material facts relating to their investments including the profits Defendants derive from the sales to Plaintiffs; the use of the proceeds of Plaintiffs' investments; the transactions occurring between Defendants and their confederates in this scheme as they shared and divided their spoils; the true economics of the investments and reasonable expectation of returns; the conflicts of interest between the investors and Defendants and their confederates in this scheme; and the nature and level of risks being undertaken by those who purchased these Securities that should have been disclosed.

68. As part of their scheme to cheat and defraud, Defendants made the conscious decision in connection with the development of the Branson Landing and the sale and distribution of the investment contract Securities used to finance the venture to conceal the economic realities of the transactions and to design the presentation and documentation of the

transactions in such a way as to hide the true nature of the transactions and conceal material facts regarding their ongoing scheme to distribute unregistered investment contract Securities to public investors. As part of this scheme to distribute these unregistered Securities without an offering circular, Defendants intentionally omitted from disclosure a vast array of material information that should have been provided to investors and potential investors as part of the distribution of these Securities. The material matters that were intentionally and knowingly omitted and concealed included:

a. A description of the business of the hotel project and the promoters of the development such that Plaintiffs could know and understand that the rooms labeled as condominium units at the Hilton Penthouse Convention Center Hotel were priced higher as nightly rentals to the public than the non-condominium rooms owned by the developer and would not likely be rented unless the developer's rooms were rented;

b. A description of the plan of operation of the venture, including budget information, sources of cash and anticipated expenditures such that Plaintiffs could know and understand that the represented 50% revenue share to Plaintiffs was actually no more than approximately 30% before Plaintiffs' taxes and loan payments, and included a double dip;

c. A clear disclosure that the developer has no obligation to pay any of the common expenses and that Plaintiffs have an obligation to pay all common expenses;

d. The number and nature of employees to be involved in the venture such that Plaintiffs could know and understand that these employees would be paid for exclusively by Plaintiffs;

e. The market research and competitive information including the number of competitors and the position of the venture among competitors such that Plaintiffs could understand the rental risks and know that they would be paying monthly overhead fees even when there were no rentals;

f. The financial information about the business of the venture, its promoters and each segment of their business such that Plaintiffs could know and understand that Defendants had no financial risk in the lack of rentals of the owner units at the Hilton Penthouse Convention Center Hotel because if the owner units were unoccupied, the event cost Defendants nothing for the empty room;

g. A description of the business structure relating to profits and expense distribution so that Plaintiffs could know and understand that Plaintiffs were incurring all expenses and competing with Defendant developer in occupancy and in rental pricing structure.

h. The information relating to compliance with state and local laws and regulations such that Plaintiffs could know and understand that they were purchasing unregistered Securities;

i. Any pending or threatened legal proceedings or the absence thereof such that Plaintiffs could know and understand the problems facing Defendants, as Defendants had multiple mechanic's liens and litigation filed against them in Taney County, Missouri Circuit Court regarding the subject property that were undisclosed to Plaintiffs at the time of closing;

j. Information with respect to any resale market for the Securities being sold and the potential for any resale market to develop such that Plaintiffs could know and

understand that there would be no ready market for resale of these Securities at prices greater than or equal to the prices paid by Plaintiffs;

k. A description of all material risks of the investment such that Plaintiffs could know and understand that they risked losing their entire investment and were extremely unlikely to realize any profit or even recoup their original capital as the price of the Securities bore no reasonable relationship to the cash flow;

l. Not disclosing to Plaintiffs that Defendants were making a profit on each sale and the amount thereof, and that Defendants were going to withdraw money Plaintiffs invested as a fee;

m. The method and plan of the distribution of the investment contract Securities such that Plaintiffs could know and understand the amounts that were being paid as sales commissions;

n. The use of the proceeds and the approximate amount of such proceeds dedicated to each use such that Plaintiffs could know and understand that Plaintiffs were paying 100% of the ongoing costs of the Hilton Penthouse Convention Center Hotel and receiving approximately 30% or less of the operating income to pay their mortgages, insurance, condominium owner's association dues and taxes;

o. The identity of any agreements, arrangements or understandings with all brokers participating in the sales of the investment contract Securities including the compensation received by such persons such that Plaintiffs could know and understand the remuneration paid to the sales agent selling the Securities;

p. The identity, background and compensation of all executive officers and other persons serving in similar capacities as part of the management team such that

21

Plaintiffs could know and understand the relationship between the members of management and others;

q.  All material contracts relating to the venture including contracts with indemnities or promoters of the venture such that Plaintiffs could know and understand these risks; and

r.  A complete disclosure that there was a unit management agreement that was between the developer and Plaintiffs and between the Hilton Worldwide, Inc. and the developer.

s.  A description of the investment contract Security including the rights and liabilities of the investors and the promoters such that Plaintiffs could analyze these rights and liabilities individually and with a representative.

t.  A complete disclosure of the fees associated with not participating in Defendants' rental program so that Plaintiffs could know that if they did not enroll their unit in Defendants' rental program that Defendants charged Plaintiffs a daily fee for not enrolling their unit.

69. Each and every one of these omissions is material to an investor or prospective investor and each was intentionally omitted from disclosures made in connection with sale of the investment contract Securities by Defendants.

70. Each Plaintiff named herein was subjected to like misrepresentations, omissions and concealments specifically listed in paragraph 68.

71. Defendants are subsidizing their own hotel by pooling utility costs and charging Plaintiffs for a portion of Defendants' share.

Case 6:12-cv-03081-DW   Document 3   Filed 06/13/12   Page 22 of 80

72. On February 29, 2012, a tornado hit the hotel causing substantial damage which resulted in the hotel being closed.

73. The anticipated re-open date is October 2012.

74. Plaintiffs receive statements quarterly pursuant to the UMA.

75. Plaintiffs received the first quarter 2012 statements for which one of those months the hotel was closed.

76. Many Plaintiffs owe the hotel money as Defendants have continued to charge Plaintiffs for utilities for the month of March 2012 at the full rate they have been charged in previous months despite the hotel being closed. See Exhibit 14 as an examplar.

## VI.   FACTUAL ALLEGATIONS COMMON TO ALL PLAINTIFFS

### A.  Identification of Defendants and Operation of Entities

77. Defendants developed a scheme by which separate single use entities control all aspects of the sale and management of the Hilton Penthouse Convention Center Hotel.

78. Defendant HCW, LLC is the overarching entity which owns and controls all of the single use entities.

79. Each of these single use entities use the same employees, share funds, are directed by the same managers, and use the same facilities all presently located at 153 S. Payne Stewart Drive, Branson, Missouri.

80. Richard Huffman, Barry Schwartz, Sam Catanese and Marc Williams operate, manage, and own all of these single use entities.

81. Each Richard Huffman, Marc Williams, Sam Catanese and Barry Schwartz perform management, accounting, or organizational functions to each of HCW, LLC, Boutique Hotel Development Company, LLC, Promenade Development Company, LLC, HCW

Management Consultants, LLC, BLR Downtown Realty, LLC, and Branson Landing Master Association, Inc.

82. Plaintiffs have found evidence of undercapitalization as Plaintiffs fourth quarter 2011 revenue checks were not sent by Defendants until after March 20, 2012.

83. Pursuant to the UMA, all revenue checks are to be sent to Plaintiffs within forty-five (45) days of the close of the previous quarter.

84. Plaintiffs questioned Defendants, by and through Defendants agent Janet Hosmann, who stated that as of March 20, 2012 Defendants did not have the money yet to pay to Plaintiffs despite the fact that the money was taken in October, November, and December 2011.

85. HCW, LLC is a land and real estate development business which developed the entire Branson Landing Project in Branson, Missouri.

86. HCW, LLC set up separate entities to do business in the Branson Landing project and specifically for the Hilton Penthouse Convention Center Hotel.

87. HCW, LLC, by and through HWC Development Company, LLC has represented to the City of Branson that each of the entities are single purpose entities all affiliates of the developer (HCW, LLC). Exhibit 4, p.6.

88. These entities are also defined as "Affiliates" in the Declaration of the Promenade at Branson Landing Condominium,

> 1.2. "Affiliates" means (a) any officer, director, employee, member, shareholder, partner or trustee of the Declarant [Promenade Development Company, LLC], HCW, Boutique Hotel Owner, BLR or of a person which is a partner, member, shareholder, trustee, or beneficiary of the Declarant, HCW, Boutique Hotel Owner or BLR (b) any person controlled by or under common control with the Declarant or a partner, member, shareholder, trustee, or beneficiary of the Declarant, HCW, Boutique Hotel Owner or BLR (c) any officer, director, trustee, partner, or employee of any entity described in (b) above, and (d) any trust for the

24

benefit of any officer, trustee, partner, member, or employee of the Declarant, HCW, Boutique Hotel Owner, BLR or person described in (a) above or any beneficiary of a trust which is a member, shareholder, or partner described in (a) above.

further showing that these entities are clearly one in the same. Exhibit B.

89. BLH Development Company, LLC is the declarant of the Hilton Penthouse Convention Center Hotel and as the declarant that entity was the original owner of each unit purchased by Plaintiffs.

90. The Declaration for the Hilton Penthouse Convention Center Hotel was recorded with the Taney County Recorder of Deeds August 21, 2007. Exhibit 5.

91. HCW, LLC used their own realty company, BLR Downtown Realty, LLC dba HCW Realty, to sell the units to Plaintiffs at the Hilton Penthouse Convention Center Hotel.

92. Employees of HCW, LLC and BLR Downtown Realty, LLC dba HCW Realty are intermingled because each of these companies is one in the same.

93. Plaintiffs dealt with Mark Hartman, Bob Allen, Jan Hossman, Ms. Williams, Dennis Evans, Bill White, Nena Redford, Dale Evans, Lynette McBratney, Nancy Trapp, and Ty Myers all real estate agents and/or employees of either HCW, LLC or BLR Downtown Realty, LLC dba HCW Realty or Hilton Worldwide, Inc.

94. All representations and/or omissions regarding the Hilton Penthouse Convention Center Hotel were made or designed by HCW, LLC and/or BLR Downtown Realty, LLC dba HCW Realty and/or Hilton Worldwide, Inc.

95. Each Plaintiff was presented with a Unit Management Agreement (UMA) to enroll their unit in the Hilton rental program. Exhibit 6.

96. Each UMA is a contract entered into between each Plaintiff and Boutique Hotel Development Company, LLC dba Hilton Promenade at Branson Landing and Hilton Worldwide, Inc.

97. Each UMA is signed by a Hilton Worldwide, Inc. employee.

98. Each UMA contains the Hilton Worldwide, Inc. logo at the top of the first page.

99. Branson Landing Hotel, LLC dba Hilton Branson Convention Center Hotel engaged Hilton Worldwide, Inc. as the hotel manager.

100. Branson Landing Hotel, LLC seems to have no function other than a listed entity on the contract with Plaintiffs and Hilton Worldwide, Inc.

101. HCW Management Consultants, LLC is the entity formed by HCW, LLC to manage all of the funds of the Condominium Owners' Association at Hilton Penthouse Convention Center Hotel.

102. HCW Management Consultants, LLC controls all funds from the Condominium Owners' Association at the Hilton Penthouse Convention Center Hotel.

103. HCW Management Consultants, LLC takes all funds from the Penthouse Condominium Owner's Association to pay the expenses.

104. Plaintiffs believe but cannot confirm that HCW Management Consultants, LLC also prepares the quarterly statements to Plaintiffs charging Plaintiffs for expenses such as management fees, utilities, repair, cleaning fees, cable, phone, internet, and the promoter split.

105. Hilton Worldwide, Inc. runs the day to day operation of the Hilton Penthouse Convention Center Hotel.

106. Hilton Worldwide, Inc. rents Plaintiffs room pursuant to the UMA.

26

107.     Hilton Worldwide, Inc. writes Plaintiffs quarterly checks for what revenue, if any, is left from the rental of Plaintiffs' units.

### B.  Material Misrepresentations and Omissions Regarding Hotel

108.     In or around January 2005, HCW, LLC began the Branson Landing Development in Branson, Missouri. Included in that development, is the Hilton Penthouse Convention Center Hotel.

109.     On or about June 14, 2005 Hilton was contracted to manage the subject hotel.

110.     HCW, LLC and BLR Downtown Realty, LLC began soliciting and advertising for sale units that were to be built in the Hilton Penthouse Convention Center Hotel.

111.     Units were contracted for sale pre-construction with large escrow deposits of twenty percent or more.

112.     Defendants' sales representatives made material misrepresentations and/or omissions to each Plaintiff, specific dates and representative making representations to each Plaintiff listed in Section IV below.

113.     Defendants' sales agents represented to Plaintiffs that the units they were purchasing were considered residential and that the units were taxed at a low residential rate.

114.     After Plaintiffs purchase and upon receiving a tax assessment from Taney County, Missouri, Plaintiffs discovered that the units they had purchased were taxed at a high commercial rate.

115.     Defendants' agents knew or should have known the representation regarding the taxation rate was false at the time the representation was made as the sales agents were

licensed real estate agents in the Branson, Missouri area who have or should have knowledge that nightly rental property is taxed at a commercial rate.

116.    All advertisements used by HCW, LLC and BLR Downtown Realty, LLC contained the Hilton logo and described the hotel as being a Hilton Hotel. Exhibits 7, 8, and 9.

117.    All communications after the sale were from Hilton employees and the UMA contains the Hilton logo at the top as well as an entity Plaintiffs engaged to manage their property containing the Hilton name, Branson Landing Hotel, LLC dba the Hilton Branson Convention Center Hotel. Exhibit 10.

118.    Plaintiffs who purchased their unit second-hand, pre-construction, were told and notified in their contract that the management was with Hilton.

119.    Plaintiffs believed they were engaging Hilton to manage their hotel room as all documents provided to them were branded with Hilton logos and Hilton was contained in the name of the entity.

120.    Defendants' sales representatives made representations that Hilton was managing the property and that if Plaintiffs purchased a unit, the UMA would be with Hilton.

121.    All of Plaintiffs UMA's are signed by Hilton employees, Mark Hartman or Bill Derbins, the current general manager of the Hilton Penthouse Convention Center Hotel at the time of signing.

122.    A Hilton employee signing the contracts further led Plaintiffs to believe they were dealing with Hilton regarding their UMA.

123.    Hilton Worldwide provides revenue checks to Plaintiffs for any revenue they receive from the rental of their hotel room.

28

124.     Plaintiffs' receipt of checks from Hilton Worldwide further led Plaintiffs to believe that Hilton was managing their unit.

125.     Plaintiffs were led to believe that HCW was only the developer and that Hilton was managing the property after the condominiums were sold when in fact HCW is managing the units and collects all revenue and manages all funds.

126.     Each Plaintiff was told by Defendants' sales representatives as well as in writing that the rental income from their hotel room at the Hilton Penthouse Convention Center Hotel would be split 50/50 with the rental operator after all fees and costs were deducted. Exhibit 11, section 11.

127.     After the Hilton Penthouse Convention Center Hotel opened and Plaintiffs began receiving statements and rental revenue from Defendants, Plaintiffs discovered that after the twelve percent management fee and the 50/50 split, Plaintiffs were being charged repair fees, utility fees and other charges, some totally absurd, after the split leaving Plaintiffs with little to no revenue.

128.     Defendants are taking half of the gross revenue from each Plaintiff and then charging Plaintiffs for all expenses of which some are fees charged by HCW Management Consultants, LLC resulting in a double-dip of fees charged to Plaintiffs by Defendants that were not previously disclosed. See sample statements attached as Exhibit 12.

129.     Exhibit 12 contains a sampling of Plaintiffs' statements which are representative of all Plaintiffs.

130.     Defendants' sales representatives made representations regarding the revenue split knowing at the time they made them they were false.

131. Defendants' sales representatives omitted to disclose the daily fee of thirty-eight dollars ($38.00) assessed against each unit that is not participating in the rental program and assessed against each unit owner wishing to stay in their own unit for more than twenty-one (21) days per year. Exhibit 13, p 9.

132. The thirty-eight dollar daily fee was not disclosed to Plaintiffs until after their purchase in a booklet mailed out to them by Hilton containing the regulations and information regarding of the use of their unit.

133. Defendants' sales agents, BLH Development Company, LLC, HCW, LLC, Branson Landing Hotel, LLC, Hilton Worldwide, Inc. and HCW Management Consultants, LLC knew the thirty-eight dollar per day fee would be imposed for not enrolling each unit in the rental program but intentionally failed to disclose said fee to Plaintiffs.

C. Unit Management Agreement (UMA)

134. Each Plaintiff entered into a UMA on or about the date set out below in Section IV.

135. Each UMA is identical and an example contract is attached as Exhibit 6.

136. The parties to the contract are each Plaintiff; the entity listed on the contract, Boutique Hotel Development Company, LLC dba Hilton Promenade at Branson Landing; and Hilton Worldwide, Inc.

137. Hilton's employees, Mark Hartman and Bill Derbins, signed each UMA as the general manager of the Hilton Penthouse Convention Center Hotel at the time the document was signed.

138.     No representative of the Boutique Hotel Development Company, LLC signed the document, only a Hilton employee.

139.     Hilton sent out correspondence to Plaintiffs indicating the UMA was with Hilton. See Exhibit 10.

140.     Plaintiffs could reasonably rely on the actions and representations of Hilton and did rely on the fact that Plaintiffs were contracting with Hilton Worldwide, Inc. and not an HCW entity.

141.     All revenue checks come from Hilton Worldwide, Inc. further representing to Plaintiffs that they had contracted with Hilton Worldwide, Inc.

142.     The UMA in paragraph 4.b. states

> Net Rental Income will be charged 12% for the Services and the balance will be divided between Owner and Company. Owner will receive 50% of the balance of the Net Rental Income from the Unit (the "Owner's Rental Proceeds"), and Company will receive 50% of the balance of the Net Rental Income.

143.     According to the UMA, the 12% service fee is to be deducted from the gross rental income and then the net rental income is to be divided 50/50 with the Unit Owner and the Company.

144.     Plaintiffs' portion of the revenue is then charged a reserve fund fee which is four percent (4%) of the gross.

145.     The reserve fund fee is kept in an account only accessible to the hotel manager and if the unit owner sells the unit, the reserve fund goes with the unit, in other words, the Plaintiffs are charged four percent (4%) of the gross revenue, before any management fees are deducted, in addition to all other fees and may never have access to those funds.

146.    In addition, Defendants failed to disclose fees charged to Plaintiffs pursuant to the UMA.

147.    Plaintiffs are charged a $38.00 daily fee if they stay in their unit more than twenty-one (21) days per year while enrolled in the UMA.

148.    The $38.00 per day fee was not disclosed until after Plaintiffs signed the UMA.

149.    The UMA Section 4.d. states the units are to be rented on a Rotation System.

150.    Plaintiffs units are not consistently rented on rotational basis as some units are rented much more frequently than others and units owned by BLH Development Company, LLC are rented more frequently than units individually owned.

151.    BLH Development Company, LLC owns all but the top four floors of the hotel structure.

152.    Plaintiffs have information that led them to the belief that Defendants are using the bottom floors owned by BLH Development Company, LLC as a hotel and only using Plaintiffs units on the top four floors as overflow.

153.    Hotel rooms rented to the public that are owned by BLH Development Company, LLC are rented at a substantially lower rental rate than Plaintiffs units.

154.    The UMA further states in Exhibit 4.f. that unit guests will be charged for damage to units.

155.    Plaintiffs are being charged for damage and lost items in the units. See Exhibit 12.

156.    The Declaration states that the patio doors and windows are owned by the hotel owner and are excluded from the owner's unit.

157.    Plaintiffs are being charged for repairs to the patio doors and windows. See Exhibit 12.

### D. The Units

158.     Each unit is situated in the Hilton Penthouse Convention Center Hotel located at Branson Landing in Branson, Missouri.

159.     The structure is a typical hotel structure with a lobby and other amenities.

160.     The hotel is a large twelve floor towering structure in which Plaintiffs own rooms on the top four floors.

161.     The Hilton Penthouse Convention Center Hotel contains forty-seven (47) studio units, seven (7) studio deluxe units, thirty-three (33) one bedroom units, and eight (8) one bed room presidential units. Exhibit 5.

162.     Not all units contain kitchens.

163.     The units contained in Hilton Penthouse Convention Center Hotel owned by Plaintiffs are not residential and Plaintiffs signed a Purchaser's Acknowledgment stating that they understood that the purpose of the Promenade Condominium was to establish a hotel for transient guests. Exhibit 11 paragraphs 2 and 19.

164.     Plaintiffs may only access their units through the Hilton front desk by making a reservation and obtaining a key from the front desk each time they visit regardless of whether they are enrolled in the UMA. See Declaration, Exhibit 5.

VII.     FACTS SPECIFIC TO EACH PLAINTIFF

### PLAINTIFFS CHRISTOPHER AND PAULA ANDREW

165.     Plaintiffs Christopher and Paula Andrew purchased unit number 1201 on September 19, 2007 for the purchase price of $439,900.00.

166. Plaintiffs purchased their unit through the HCW Realty office at 3027 W. Hwy 76, Branson, Missouri.

167. The individuals responsible for the misrepresentation and/or omissions and dates of occurrence are Dennis Evans (HCW, LLC employee) and Bill White (HCW, LLC employee) sometime on or before the date of the signing of their Contract Purchase Agreement (CPA), Plaintiffs cannot recall the specific date.

168. Plaintiffs entered into the UMA on September 19, 2007.

169. Plaintiffs became aware of the misrepresentations and/or omissions specifically set out in paragraphs zzz above on or about November 2007 when their first revenue check was received.

170. Plaintiffs have lost thousands of dollars due to the misrepresentation and/or omissions and the breach of contract of Defendants in an amount to be proven at trial.

PLAINTIFFS ANDREW AND GLENDA BEACH

171. Plaintiffs Andrew and Glenda Beach purchased unit number 1120 on September 27, 2007 for the purchase price of $187,900.00.

172. Plaintiffs purchased their unit through the HCW Realty, at the Branson Landing, Branson Missouri.

173. There were several individuals responsible for the misrepresentation and/or omissions who were employees of HCW Realty and dates of occurrence are Summer of 2006, Plaintiffs cannot recall the specific dates but know that the representations occurred prior to signing the CPA.

174. Plaintiffs entered into the UMA in September of 2007.

175. Plaintiffs became aware of the misrepresentations and/or omissions specifically set out in paragraphs zzz above on or about November 2007 when their first revenue check was received.

176. Plaintiffs have lost thousands of dollars due to the misrepresentation and/or omissions and the breach of contract of Defendants in an amount to be proven at trial.

## PLAINTIFFS OTTO D. AND JENNIFER L. BREWER

177. Plaintiffs Otto D. and Jennifer L. Brewer purchased unit number 1102 on September 20, 2007 for the purchase price of $199,900.00.

178. Plaintiffs purchased their unit through the BLH Development Company, LLC at El Dorado Springs, Missouri.

179. The individuals responsible for the misrepresentation and/or omissions and dates of occurrence are Dennis Evans (HCW employee) and Nena Redford (HCW employee) on or before the date the CPA was signed, Plaintiffs cannot recall the specific dates.

180. Plaintiffs entered into the UMA on September 20, 2007.

181. Plaintiffs became aware of the misrepresentations and/or omissions specifically set out in paragraphs zzz above on or about February 2008 when their first revenue check was received.

182. Plaintiffs have lost thousands of dollars due to the misrepresentation and/or omissions and the breach of contract of Defendants in an amount to be proven at trial.

## PLAINTIFFS RICHARD G. AND KIMBERLY A. BRULL

183. Plaintiffs Richard G. and Kimberly A. Brull purchased unit number 1016 on September 7, 2007 for the purchase price of $297,000.00.

184. Plaintiffs purchased their unit through the HCW Realty office at, Branson, Missouri.

185. The individual responsible for the misrepresentation and/or omissions and dates of occurrence are Nena Redford (HCW, LLC employee) in August of 2007.

186. Plaintiffs entered into the UMA on August 27, 2007.

187. Plaintiffs became aware of the misrepresentations and/or omissions specifically set out in paragraphs zzz above on or about February 2008 when their first revenue check was received.

188. Plaintiffs have lost thousands of dollars due to the misrepresentation and/or omissions and the breach of contract of Defendants in an amount to be proven at trial.

### PLAINTIFF BERNARD CHILDS

189. Plaintiff Bernard Childs purchased his units numbered 1107, 1111, 909, and 923 on October 19, 2007 for the total purchase price of $1,173,600.00.

190. Plaintiff purchased his unit through the HCW Realty office at the Branson Landing Office, Branson, Missouri.

191. The individuals responsible for the misrepresentation and/or omissions and dates of occurrence are Dale Evans, Lynette McBratney, and Nena Redford all (HCW, LLC employees on November 21, 2005.

192. Plaintiff entered into the UMA on or about October 19, 2007.

193. Plaintiff became aware of the misrepresentations and/or omissions specifically set out in paragraphs zzz above on or about February 8, 2008 when their first revenue check was received.

194. Plaintiff has lost thousands of dollars due to the misrepresentation and/or omissions and the breach of contract of Defendants in an amount to be proven at trial.

### PLAINTIFF DAVID A. AND THERESA M. CHILDS

195. Plaintiffs David A. and Theresa M. Childs purchased unit number 1001 on September 14, 2007 for the purchase price of $330,947.64.

196. Plaintiffs purchased their unit through the BLH Development Company, LLC in Dearborn, Michigan.

197. The individuals responsible for the misrepresentation and/or omissions and dates of occurrence are Dennis Evans (BLH Development Company LLC employee) on December 7, 2005.

198. Plaintiffs entered into the UMA on September 19, 2007.

199. Plaintiffs became aware of the misrepresentations and/or omissions specifically set out in paragraphs zzz above on or about February, 2008 when their first revenue check was received.

200. Plaintiffs have lost thousands of dollars due to the misrepresentation and/or omissions and the breach of contract of Defendants in an amount to be proven at trial.

## PLAINTIFFS ALBERT A. AND KARIN P. DALKEY

201. Plaintiffs Albert A. and Karin P. Dalkey purchased unit number 902 on July/August, 2007 for the purchase price of $179,900.

202. Plaintiffs purchased their unit through the HCW Realty Office, LLC in Branson, Missouri.

203. The individual responsible for the misrepresentation and/or omissions and dates of occurrence are Nena Redford a (HCW LLC, employee) prior to purchase, Plaintiffs cannot recall the specific dates.

204. Plaintiffs entered into the UMA on February 10, 2006.

205. Plaintiffs became aware of the misrepresentations and/or omissions specifically set out in paragraphs zzz above on or about December, 2007 when their first revenue check was received.

37

206. Plaintiffs have lost thousands of dollars due to the misrepresentation and/or omissions and the breach of contract of Defendants in an amount to be proven at trial.

PLAINTIFF JAMES P. AND THERESA F. DODSON

207. Plaintiffs James P. and Theresa F. Dodson purchased unit number 1010 on August 31, 2007 for the purchase price of $297,900.00.

208. Plaintiffs purchased their unit through the HCW Realty Office at the 3027 W. Country Music Blvd. Branson, Missouri.

209. The individual responsible for the misrepresentation and/or omissions and dates of occurrence are Nena Redford (HCW LLC, employee) on or about July 3, 2007.

210. Plaintiffs entered into the UMA on August 31, 2007.

211. Plaintiffs became aware of the misrepresentations and/or omissions specifically set out in paragraphs zzz above on or about September 30, 2007 when their first revenue check was received.

212. Plaintiffs have lost thousands of dollars due to the misrepresentation and/or omissions and the breach of contract of Defendants in an amount to be proven at trial.

PLAINTIFF EVANS RENOVATIONS MO, LLC

213. Plaintiff Evans Renovations MO, LLC purchased unit number 1011 on November 28, 2008 for the purchase price of $250,000.00.

214. Plaintiff purchased its unit through the BLH Development Company, LLC at Dickinson, Texas in their home.

215. The individual responsible for the misrepresentation and/or omissions and dates of occurrence are Nena Redford (BLH, LLC employee) on or around October 29, 2008.

216. Plaintiff entered into the UMA on December 10, 2008.

38

217. Plaintiff became aware of the misrepresentations and/or omissions specifically set out in paragraphs zzz above on or about February 18, 2009 when their first revenue check was received.

218. Plaintiff has lost thousands of dollars due to the misrepresentation and/or omissions and the breach of contract of Defendants in an amount to be proven at trial.

### PLAINTIFF GREEN 1991 FAMILY TRUST ½ INT AND MICHAEL GREENBERG ½ INT BY JACK K AND LEE A GREEN (GREENBERG) TRUSTEES

219. Plaintiff Green 1991 Family Trust ½ Int and Michael Greenberg ½ Int by Jack K and Lee A Green purchased unit number 1017 on August 21, 2007 for the purchase price of $327,900.00.

220. Plaintiff purchased its unit through the HCW office, in Branson Missouri, LLC.

221. The individual responsible for the misrepresentation and/or omissions and dates of occurrence are Nancy Trapp (BLH, LLC employee) sometime prior to the signing of the CPA, Plaintiffs cannot recall the specific dates.

222. Plaintiff entered into the UMA on August 21, 2007.

223. Plaintiff became aware of the misrepresentations and/or omissions specifically set out in paragraphs zzz above on or about November 2007 when their first revenue check was received.

224. Plaintiff has lost thousands of dollars due to the misrepresentation and/or omissions and the breach of contract of Defendants in an amount to be proven at trial.

### PLAINTIFF RICKI HOLMES

225. Plaintiff Ricki Holmes purchased his unit number 921 on September 25, 2007 for the total purchase price of $189,900.00.

226. Plaintiff purchased his unit through the HCW Realty office at the Branson Landing Office, Branson, Missouri.

227. The individuals responsible for the misrepresentation and/or omissions and dates of occurrence are Maggie Ann Realty, and Nena Redford all (HCW, LLC employees) on or about November 14, 2005.

228. Plaintiff entered into the UMA on August 20, 2007.

229. Plaintiff became aware of the misrepresentations and/or omissions specifically set out in paragraphs zzz above on or about November 2007 when their first revenue check was received.

230. Plaintiff has lost thousands of dollars due to the misrepresentation and/or omissions and the breach of contract of Defendants in an amount to be proven at trial.

PLAINTIFF IRA PLUS SOUTHWEST LLC FBO MELANIE BRENEMAN IRA 75% % LARRY AND MELANIE BRENEMAN 25%, LLC

231. Plaintiff IRA Plus Southwest LLC FBO Melanie Breneman IRA 75% % Larry and Melanie Breneman 25%, LLC purchased unit number 908 on September 14, 2007 for the purchase price of $169,900.00.

232. Plaintiff purchased its unit through the BLH Development Company, LLC at Dickinson, Texas in our home.

233. The individuals responsible for the misrepresentation and/or omissions and dates of occurrence are Nena Redford (BLH, LLC employee) and Dennis Evans (BHL, LLC employee) on or around October 24, 2005.

234. Plaintiff entered into the UMA on October 1, 2007.

235. Plaintiff became aware of the misrepresentations and/or omissions specifically set out in paragraphs zzz above on or about February 15, 2008 when their first revenue check was received.

236. Plaintiff has lost thousands of dollars due to the misrepresentation and/or omissions and the breach of contract of Defendants in an amount to be proven at trial.

PLAINTIFFS DENNIS AND DEANNE L KORYCKI

237. Plaintiffs Dennis and Deanne L Korycki purchased unit number 905 oi August 2007 for the purchase price of $189,000.00.

238. Plaintiffs purchased their unit through the HCW Realty at the Branson Landing Office Branson, Missouri.

239. The individual responsible for the misrepresentation and/or omissions and dates of occurrence are Bill White (HCW LLC, employee) on or prior to the date the CPA was signed, Plaintiffs cannot recall the specific dates.

240. Plaintiffs entered into the UMA on September 13, 2007.

241. Plaintiffs became aware of the misrepresentations and/or omissions specifically set out in paragraphs zzz above on or about November 2007 when their first revenue check was received.

242. Plaintiffs have lost thousands of dollars due to the misrepresentation and/or omissions and the breach of contract of Defendants in an amount to be proven at trial.

PLAINTIFF LAKE VEW & CLASSIC PROPERTIES, LLC C/O BARBARA MISHKIN

243. Plaintiff Lake View & Classic Properties LLC c/0 Barbara Mishkin purchased unit number 1109 on October 17, 2007 for the purchase price of $207,900.00.

244. Plaintiff purchased its unit through the HCW Realty office at the Branson Landing office, Branson, Missouri.

245. The individuals responsible for the misrepresentation and/or omissions and dates of occurrence are Bill White and Dennis Evans (HCW, LLC employees) on or around September 2007.

246. Plaintiff entered into the UMA on December 27, 2007.

247. Plaintiff became aware of the misrepresentations and/or omissions specifically set out in paragraphs zzz above on or about February 15, 2008 when their first revenue check was received.

248. Plaintiff has lost thousands of dollars due to the misrepresentation and/or omissions and the breach of contract of Defendants in an amount to be proven at trial.

PLAINTIFF LD VALLEY VIEW #5 FAMILY LIMITED PARTNERSHIP

249. Plaintiff LD Valley View #5 Family Limited Partnership purchased unit number 911 on October 16, 2008 for the purchase price of $271,915.00.

250. Plaintiff purchased its unit through the BLH Development Company office at the Branson Landing office, Branson, Missouri.

251. The individual responsible for the misrepresentation and/or omissions and dates of occurrence is Ty Meyers (BLH, LLC employees) on or around April 2008.

252. Plaintiffs entered into the UMA on December 27, 2008.

253. Plaintiff became aware of the misrepresentations and/or omissions specifically set out in paragraphs zzz above on or about February 15, 2009 when their first revenue check was received.

254. Plaintiff has lost thousands of dollars due to the misrepresentation and/or omissions and the breach of contract of Defendants in an amount to be proven at trial.

MANUBAY TEODORO A LIVING TRUST 6/10/1986

255. Plaintiff Manubay Teodoro A Living Trust 6/10/1986 purchased unit number 1117 on December 3, 2005 for the purchase price of $335,900.00.

256. Plaintiff purchased its unit through the BLH Development Company, LLC office at the Branson Landing office, Branson, Missouri.

257. The individual responsible for the misrepresentation and/or omissions and dates of occurrence are Dennis Evans (HCW, LLC employees) on or before the date of the signing of the CPA, Plaintiffs cannot recall the specific dates.

258. Plaintiff entered into the UMA on September 28, 2007.

259. Plaintiff became aware of the misrepresentations and/or omissions specifically set out in paragraphs zzz above on or about November, 2008 when their first revenue check was received.

260. Plaintiff has lost thousands of dollars due to the misrepresentation and/or omissions and the breach of contract of Defendants in an amount to be proven at trial.

PLAINTIFFS ANTHONY J. AND JULIE A. MARSCHNER

261. Plaintiffs Anthony J. and Julie A. Marschner purchased units numbered 1034 and 1036 on September 5, 2007 for the total purchase price of $475,800.00.

262. Plaintiffs purchased their unit through the HCW Realty and closed in Wisconsin.

263. The individual responsible for the misrepresentation and/or omissions and dates of occurrence are Nancy White (HCW, LLC employee) on or before the date of the signing of the CPA, Plaintiffs cannot recall the specific dates.

264. Plaintiffs entered into the UMA on August 31, 2007.

265. Plaintiffs became aware of the misrepresentations and/or omissions specifically set out in paragraphs zzz above on or about November 2007 when their first revenue check was received.

266. Plaintiffs have lost thousands of dollars due to the misrepresentation and/or omissions and the breach of contract of Defendants in an amount to be proven at trial.

### PLAINTIFFS LAURENCE I AND TERESA L MILLER

267. Plaintiffs Laurence I and Teresa L Miller purchased unit number 1103 on November 15, 2007 for the purchase price of $205,000.00.

268. Plaintiffs purchased their unit through the HCW Realty and closed at the Branson, Missouri office.

269. The individual responsible for the misrepresentation and/or omissions and dates of occurrence are Nancy Trapp (HCW, LLC employee) on or around October and November 2007.

270. Plaintiffs entered into the UMA on November 15, 2007.

271. Plaintiffs became aware of the misrepresentations and/or omissions specifically set out in paragraphs zzz above on or about February 9, 2008 when their first revenue check was received.

272. Plaintiffs have lost thousands of dollars due to the misrepresentation and/or omissions and the breach of contract of Defendants in an amount to be proven at trial.

### PLAINTIFFS HAROLD LEROY AND MARJORIE MINATRE

273. Plaintiffs Harold Leroy and Marjorie Minatre purchased units numbered 1005 and 1123 on October 15, 2007 for the total purchase price of $528,821.00.

274. Plaintiffs purchased their unit through the BLH Realty and closed at the BLH Development Co. 3027 W. Hwy 76, Branson, Missouri.

275. The individuals responsible for the misrepresentation and/or omissions and dates of occurrence are Dennis Evans and Lynnette McBratney (HCW, LLC employee) in June 2005.

276. Plaintiffs entered into the UMA on October 15, 2007.

277. Plaintiffs became aware of the misrepresentations and/or omissions specifically set out in paragraphs zzz above on or about February 15, 2008 when their first revenue check was received.

278. Plaintiffs have lost thousands of dollars due to the misrepresentation and/or omissions and the breach of contract of Defendants in an amount to be proven at trial.

PLAINTIFFS J. RONALD AND FAYE MONTGOMERY

279. Plaintiffs J. Ronald and Faye Montgomery purchased unit number 1115 on August 29, 2007 for the total purchase price of $207,900.00.

280. Plaintiffs purchased their unit through the BLH Development and closed in Longmont, Colorado.

281. The individuals responsible for the misrepresentation and/or omissions and dates of occurrence are Nancy White, Dennis Evans and Mark Hartman (HCW, LLC employee) on various dates by phone, email, and in person between 2005 and August 29, 2007.

282. Plaintiffs entered into the UMA on August 28, 2007.

283. Plaintiffs became aware of the misrepresentations and/or omissions specifically set out in paragraphs zzz above on or about November 8, 2007 when their first revenue check was received.

284. Plaintiffs have lost thousands of dollars due to the misrepresentation and/or omissions and the breach of contract of Defendants in an amount to be proven at trial.

### PLAINTIFF PARADISE CHATEAU TRUST 11/30/2007 TRUST C/O MARILYN K. BECK

285. Plaintiff Paradise Chateau Trust 11/30/2007 Trust c/o Marilyn K. Beck purchased unit number 1003 on October 30, 2007 for the purchase price of $199,900.00.

286. Plaintiff purchased its unit through the BLH Development Co, LLC at 3047 W. Hwy 76, Branson, Missouri.

287. The individuals responsible for the misrepresentation and/or omissions and dates of occurrence are Nancy White and Dennis Evans (HCW, LLC employees) and Mark W. Hartman (General Manager of Hilton) on or around October 2005.

288. Plaintiff entered into the UMA on October 16, 2007.

289. Plaintiff became aware of the misrepresentations and/or omissions specifically set out in paragraphs zzz above on or about February, 2008 when their first revenue check was received.

290. Plaintiff has lost thousands of dollars due to the misrepresentation and/or omissions and the breach of contract of Defendants in an amount to be proven at trial.

### PLAINTIFF RABAZA DIONISIO & ELIANE GRAS C/O JOHN STRAND

291. Plaintiff Rabaza Dionisio & Eliane Gras c/o John Strand purchased unit number 1213 on November 21, 2007 for the purchase price of $449,900.00.

292. Plaintiff purchased its unit through the HCW Realty office at the Branson Landing office, Branson, Missouri.

293. The individuals responsible for the misrepresentation and/or omissions and dates of occurrence are Nena Redford and Bob Allen (HCW, LLC employees) on or around December 27, 2005.

294. Plaintiff entered into the UMA on August 24, 2007.

295. Plaintiff became aware of the misrepresentations and/or omissions specifically set out in paragraphs zzz above on or about Februar, 2008 when their first revenue check was received.

296. Plaintiff has lost thousands of dollars due to the misrepresentation and/or omissions and the breach of contract of Defendants in an amount to be proven at trial.

### PLAINTIFF RAGAT FAMILY 2008 TRUST 07/10/2008 C/O GARY RAGAT

297. Plaintiff Ragat Family 2008 Trust 07/10/2008 c/o Gary Ragat purchased unit number 1015 on March 17, 2008 for the purchase price of $197,900.00.

298. Plaintiff purchased its unit through the HCW Realty office at the Branson Landing office, Branson, Missouri.

299. The individual responsible for the misrepresentation and/or omissions and dates of occurrence are Nena Redford (HCW, LLC employee) on or around March 17, 2008.

300. Plaintiff entered into the UMA on March 17, 2008.

301. Plaintiff became aware of the misrepresentations and/or omissions specifically set out in paragraphs zzz above on or about May 13, 2008 when their first revenue check was received.

302. Plaintiff has lost thousands of dollars due to the misrepresentation and/or omissions and the breach of contract of Defendants in an amount to be proven at trial.

### PLAINTIFF RAIDEL ELIZABETH W REVOCABLE TRUST 08/09/1999

303. Plaintiff Raidel Elizabeth W Revocable Trust 08/09/1999 purchased unit number 904 on August 28, 2007 for the purchase price of $289,900.00.

304. Plaintiff purchased its unit through the HCW Realty office at the Branson Landing office, Branson, Missouri.

305. The individuals responsible for the misrepresentation and/or omissions and dates of occurrence are Bill White and Dennis Evans (HCW, LLC employees) Mark Hartman and Jan Hosman (Hilton Worldwide, Inc. employees) on or around December 29, 2005.

306. Plaintiff entered into the UMA on August 28, 2007.

307. Plaintiff became aware of the misrepresentations and/or omissions specifically set out in paragraphs zzz above on or about February 15, 2008 when their first revenue check was received.

308. Plaintiff has lost thousands of dollars due to the misrepresentation and/or omissions and the breach of contract of Defendants in an amount to be proven at trial.

PLAINTIFFS CHAD AND AMY REGISTER

309. Plaintiffs Chad and Amy Register purchased unit number 1130 on August 2007 for the purchase price of $299,900.00.

310. Plaintiffs purchased their unit through the HCW Realty at the Branson Landing Office Branson, Missouri.

311. The individual responsible for the misrepresentation and/or omissions and dates of occurrence are Bill White (HCW LLC, employee) on the date of or prior to the signing of the CPA, Plaintiffs cannot recall specific dates.

312. Plaintiffs entered into the UMA on September 18, 2007.

313. Plaintiffs became aware of the misrepresentations and/or omissions specifically set out in paragraphs zzz above on or about November 2007 when their first revenue check was received.

314. Plaintiffs have lost thousands of dollars due to the misrepresentation and/or omissions and the breach of contract of Defendants in an amount to be proven at trial.

## PLAINTIFFS CHRIS AND TRACY ROBINSON

315. Plaintiffs Chris and Tracy Robinson purchased unit number 934 on November 26, 2005 for the purchase price of $169,900.00.

316. Plaintiffs purchased their unit through the HCW Realty at the Branson Landing Office Branson, Missouri.

317. The individual responsible for the misrepresentation and/or omissions and dates of occurrence are Bill White (HCW LLC, employee) in September and November 2005.

318. Plaintiffs entered into the UMA on August 2007.

319. Plaintiffs became aware of the misrepresentations and/or omissions specifically set out in paragraphs zzz above on or about November 2007 when their first revenue check was received.

320. Plaintiffs have lost thousands of dollars due to the misrepresentation and/or omissions and the breach of contract of Defendants in an amount to be proven at trial.

## PLAINTIFFS STANLEY K. AND NORMA RYAN

321. Plaintiffs Stanley K. and Norma Ryan purchased unit number 1124 on December 18, 2008 for the purchase price of $250,000.00.

322. Plaintiffs purchased their unit through the HCW Realty at the Branson Landing Office Branson, Missouri.

323. The individual responsible for the misrepresentation and/or omissions and dates of occurrence are Nancy Trapp (HCW LLC, employee) on or around November 2008.

324. Plaintiffs entered into the UMA on December 18, 2008.

325. Plaintiffs became aware of the misrepresentations and/or omissions specifically set out in paragraphs zzz above on or about February 15, 2009 when their first revenue check was received.

326. Plaintiffs have lost thousands of dollars due to the misrepresentation and/or omissions and the breach of contract of Defendants in an amount to be proven at trial.

PLAINTIFFS PATRICK N. AND ELIZABETH A. SEARS

327. Plaintiffs Patrick N. and Elizabeth A. Sears purchased unit number 1224 on September 10, 2007 for the purchase price of $199,900.00.

328. Plaintiffs purchased their unit through the HCW Realty at the Branson Landing Office Branson, Missouri.

329. The individual responsible for the misrepresentation and/or omissions and dates of occurrence are Lynette McBratney and Nena Redford (HCW LLC, employees) on June 17, 2006.

330. Plaintiffs entered into the UMA on September 18, 2007.

331. Plaintiffs became aware of the misrepresentations and/or omissions specifically set out in paragraphs zzz above on or about November 2007 when their first revenue check was received.

332. Plaintiffs have lost thousands of dollars due to the misrepresentation and/or omissions and the breach of contract of Defendants in an amount to be proven at trial.

PLAINTIFFS GREGORY M. AND STEPHANIE G. SMITH

333. Plaintiffs Gregory M. and Stephanie G. Smith purchased unit number 1030 on September 12, 2007 for the purchase price of $297,000.00.

334. Plaintiffs purchased their unit through the HCW Realty at the Branson Landing Office Branson, Missouri.

335. The individuals responsible for the misrepresentation and/or omissions and dates of occurrence are Nena Redford and Dennis Evens (HCW LLC, employees) in March 2006.

336. Plaintiffs entered into the UMA on September 12, 2007.

337. Plaintiffs became aware of the misrepresentations and/or omissions specifically set out in paragraphs zzz above on or about November 8, 2007 when their first revenue check was received.

338. Plaintiffs have lost thousands of dollars due to the misrepresentation and/or omissions and the breach of contract of Defendants in an amount to be proven at trial.

PLAINTFIFFS MATTHEW G. AND TRENDA L. SOMERS

339. Plaintiffs Matthew G. and Trenda L. Somers purchased unit number 1021 on September 21, 2007 for the purchase price of $199,900.00.

340. Plaintiffs purchased their unit through the HCW Realty at the Branson Landing Office Branson, Missouri.

341. The individuals responsible for the misrepresentation and/or omissions and dates of occurrence are Nena Redford and Dennis Evens (HCW LLC, employees) on or prior to the date of the CPA, Plaintiffs cannot recall specific dates.

342. Plaintiffs entered into the UMA on October 3, 2007.

343. Plaintiffs became aware of the misrepresentations and/or omissions specifically set out in paragraphs zzz above on or about February 2008 when their first revenue check was received.

344. Plaintiffs have lost thousands of dollars due to the misrepresentation and/or omissions and the breach of contract of Defendants in an amount to be proven at trial.

## PLAINTIFFS MARK AND SUSAN STEPHENS

345. Plaintiffs Mark and Susan Stephens purchased unit number 901 on August 27, 2007 for the purchase price of $319,900.00.

346. Plaintiffs purchased their unit through the BLH Realty at the Branson Landing Office Branson, Missouri.

347. The individual responsible for the misrepresentation and/or omissions and dates of occurrence are Nena Redford (HCW LLC, employee) on November 1, 2005.

348. Plaintiffs entered into the UMA on August 17, 2007.

349. Plaintiffs became aware of the misrepresentations and/or omissions specifically set out in paragraphs zzz above on or about November 2007 when their first revenue check was received.

350. Plaintiffs have lost thousands of dollars due to the misrepresentation and/or omissions and the breach of contract of Defendants in an amount to be proven at trial.

## PLAINTIFF SUNBELT CAPITAL VENTURES INC.

351. Plaintiff Sunbelt Capital Ventures Inc. purchased unit number 916 on January 16, 2009 for the purchase price of $220,000.00.

352. Plaintiff purchased its unit through the BLH Development Company, LLC office at the Branson Landing office, Branson, Missouri.

353. The individual responsible for the misrepresentation and/or omissions and dates of occurrence are Ty Meyers (HCW, LLC employee) on the date or prior to the signing of the CPA, Plaintiffs cannot recall specific dates.

354. Plaintiff entered into the UMA on January 16, 2009.

355. Plaintiff became aware of the misrepresentations and/or omissions specifically set out in paragraphs zzz above on or about May 2009 when their first revenue check was received.

356. Plaintiff has lost thousands of dollars due to the misrepresentation and/or omissions and the breach of contract of Defendants in an amount to be proven at trial.

PLAINTIFF TAX FREE STRATEGIES LLC FBO CRAIG LAWRENCE WHEELER
IRA

357. Plaintiff Tax Free Strategies LLC FBO Craig Lawrence Wheeler IRA purchased units numbered 1108 and 919 on May 21, 2007 and March 10, 2006 for the total purchase price of $387,800.00.

358. Plaintiff purchased its unit through the HCW Realty office at the Branson Landing office, Branson, Missouri.

359. The individuals responsible for the misrepresentation and/or omissions and dates of occurrence are Nancy White, Nena Redford and Dennis Evans (HCW, LLC employees) Ms. Williams and Jan Hosman on or around January, February, and March of 2006.

360. Plaintiff entered into the UMA on May, 21, 2007.

361. Plaintiff became aware of the misrepresentations and/or omissions specifically set out in paragraphs zzz above on or about November 9, 2009 when their first revenue check was received.

362. Plaintiff has lost thousands of dollars due to the misrepresentation and/or omissions and the breach of contract of Defendants in an amount to be proven at trial.

363. Plaintiff Tax Free Strategies LLC C/O Dale Hicks purchased unit number 1216 on September 20, 2007, for the purchase price of $200,000.00.

364. Plaintiff purchased its unit through the Branson Landing Realty office at the Branson Landing office, Branson, Missouri.

365. The individuals responsible for the misrepresentation and/or omissions and dates of occurrence are Nancy White and Dennis Evans (HCW, LLC employees) on April 13, 2006.

366. Plaintiff entered into the UMA on September 20, 2007.

367. Plaintiff became aware of the misrepresentations and/or omissions specifically set out in paragraphs zzz above on or about February 16, 2008 when their first revenue check was received.

368. Plaintiff has lost thousands of dollars due to the misrepresentation and/or omissions and the breach of contract of Defendants in an amount to be proven at trial.

## COUNT I

### (Federal Securities Laws Violations by All Defendants)

369. Plaintiffs reallege and incorporate herein by reference the allegations contained in the preceding and subsequent Paragraphs of this Complaint as if fully set out herein en hac verba and further allege:

370. No registration statement was filed or in effect with the SEC pursuant to the Securities Act and no exemption from registration existed with respect to the Securities and transactions described in this Complaint.

54

371.	Defendants, directly and indirectly, have: (a) made use of the means or instruments of transportation or communications in interstate commerce or of the mails to sell the Securities as described herein, through the use or medium of oral representations and written materials; (b) caused the Securities to be carried through the mails or in interstate commerce, by any means or instruments of transportation, for the purpose of sale or delivery after sale; and/or (c) made use of the means or instruments of transportation or communication in interstate commerce or of the mails to offer to sell the Securities as described herein through use or medium of oral representations and written materials, as described in the Complaint, without a registration statement having been filed or being in effect with the Commission as to the Securities or qualification for an exemption therefrom.

372.	Defendants sold investment contracts to Plaintiffs by offering for sale Securities in the form of condominium-hotel rooms at the Hilton Penthouse Convention Center Hotel. These offerings were more than merely a fee simple interest in land but were in actuality an investment contract sold into a common enterprise with the expectation of profits solely from the efforts of third parties.

373.	Plaintiffs invested their money in a range from $169,000.00 to $475,800.00 per security.

374.	Plaintiffs and each of them invested their money in a common enterprise known as Hilton Penthouse Convention Center Hotel whereby Hilton Worldwide, Inc. was to rent out the investment securities and Plaintiffs would make a profit.

375.	Defendants sold Plaintiffs the investment securities on the basis that a third party, Hilton Worldwide, Inc., would use their efforts to make a profit for Plaintiffs in renting

out their investment securities to the general public using the rental pool agreement (Unit Management Agreement).

376.     Plaintiffs have little to no control over the rental or use of their unit, in fact Plaintiffs are penalized thirty-eight dollars per day for not participating in the rental program or if they exceed their own use of their unit by more than twenty-one (21) days per year.

377.     Plaintiffs may not freely rent their unit on their own to the public, Plaintiffs may not rent their unit to tenants on a monthly or yearly basis, Plaintiffs may only stay in their own unit twenty-one days per year if the unit is not already rented to the public, in other words, Plaintiffs are materially restricted in the use of the unit.

378.     Plaintiffs may not even access their own unit without first obtaining a new key card from the front desk after first making a reservation each time the Plaintiff wishes to access his or her own unit.

379.     Defendants, directly and indirectly, offered to sell and indeed sold these Securities to Plaintiffs without a registration statement having been filed or being in effect with the SEC or qualify for an exemption therefrom. By reason of the foregoing, Defendants have violated Sections 5(a) and 5(c) of the Securities Act, 15 U.S.C. §§ 77e(a) and 77e(c).

380.     By reason of the conduct alleged herein, Defendants violated Section 12(a)(1) of the 1933 Act. Plaintiffs demand rescission of these sales of unregistered Securities.

381.     Defendants have further violated the Securities Act of 1933 by failing to comply with rules promulgated by the Securities and Exchange Commission (SEC) specifically Release No. 33-5347 which deals specifically with condominium sales.

382.     Under SEC Release No. 33-5347, the condominium units Defendants sold to

Plaintiffs are unregistered securities.

383.     Defendants affirmatively and actively concealed their unlawful conduct from

Plaintiffs. Defendants concealed the true nature of their unlawful conduct and acts in

furtherance thereof, and actively concealed their activities through various other means

and methods to avoid detection. Defendants' investment contract, in the section entitles

"The Penthouse Condominium Purchaser's Acknowledgment",  included the following

language specifically designed to conceal the fact Defendants were selling unregistered

Securities:

> 19. NO SALES REPRESENTATIVE PROMISED THAT THE PRUCHASE OF
> A UNIT WOULD PROVIDE A RETURN ON INVESTMENT OR TAX
> ADVANTAGES. PARTICIPATION IN ANY RENTAL PROGRAM THAT
> MAY BE OFFERED IS NOT MANDATORY AND I MAY CHOSE (sic) TO
> ENTER THE RENTAL PROGRAM OF MY OWN VOLITION AT A LATER
> DATE. NO REPERSENTATION HAS BEEN MADE TO ME AS TO THE
> AMOUNT OF ANY GROSS RENTAL INCOME, THE NUMBER OF NIGHTS
> THE UNIT WILL BE RENTED, OR THE AVERAGE DAILY RENTAL
> PRICE, IF ANY.

384.     Plaintiffs did not discover, and could not have discovered through the exercise of

reasonable diligence, that Defendants were violating the securities laws as alleged herein

until shortly before this action was commenced. As a result of the active concealment of

the unlawful conduct by Defendants, any and all applicable statutes of limitations

otherwise applicable to the allegations herein have been tolled.

COUNT II

(Violation of Section 12(a)(2) of the 1933 Securities Act by All Defendants)

385.     Plaintiffs reallege and incorporate herein by reference the allegations contained in the preceding and subsequent Paragraphs of this Complaint as if fully set out herein en hac verba and further allege:

386.     Under Section 12(a)(2) of the Securities Act of 1933, Defendants were sellers, offerors and/or solicitors of the Securities. Defendants solicited the sale of the Securities to each of the Plaintiffs for Defendants' own financial benefit.

387.     The statements referred to hereinabove were made in scripted oral representations and other materials made by Defendants to the Plaintiffs. The scripted oral representations to the Plaintiffs contained untrue statements of material facts, omitted other facts necessary to make the statements made not misleading and failed to disclose material facts. Defendants acted to sell the Securities by way of the scripted oral representations. Defendants' actions included preparing the scripted oral presentations and other material used in the sale of the Securities which were false and misleading because they did not disclose the material adverse facts set forth above.

388.     Plaintiffs purchased the Securities pursuant to the Defendants' scripted oral representations. Plaintiffs did not know, and in the exercise of reasonable diligence could not have known, of the untruths and omissions contained in or made in connection with Defendants' scripted oral representations.

389.     Defendants used real estate agents, not a securities broker dealer, to sell the unregistered securities.

390.     By reason of the conduct alleged herein, Defendants violated Section 12(a)(2) of the 1933 Act and rules promulgated there under. As a proximate result of Defendants' violations Plaintiffs and each of the Plaintiffs have been damaged.

391.    Defendants affirmatively and actively concealed their unlawful conduct from

Plaintiffs. Defendants concealed the true nature of their unlawful conduct and acts in

furtherance thereof, and actively concealed their activities through various other means

and methods to avoid detection. Plaintiffs did not discover, and could not have

discovered through the exercise of reasonable diligence, that Defendants were violating

the securities laws as alleged herein until shortly before this action was commenced. As a

result of the active concealment of the unlawful conduct by Defendants, any and all

applicable statutes of limitations otherwise applicable to the allegations herein have been

tolled.

## COUNT III

(Violation of Section 10(b) of the 1934 Securities Act and Rule 10b-5 by all Defendants)

392.    Plaintiffs reallege and incorporate herein by reference the allegations contained in

the preceding and subsequent Paragraphs of this Complaint as if fully set out herein en

hac verba and further allege:

393.    Defendants disseminated or approved the statements specified above, which they

knew were materially false and misleading in that they concealed and failed to disclose

material facts necessary in order to make the statements made, in light of the

circumstances under which they were made, not misleading.

394.    Defendants violated §10(b) of the 1934 Act and Rule 10b-5 in that they:

    a.  Employed devices, schemes, and artifices to defraud;

    b.  Omitted to state material facts necessary in order to make statements made, in

        light of the circumstances under which they were made, not misleading; and/or

     c.   Engaged in acts, practices, and a course of business that operated as a fraud or deceit upon Plaintiffs and others similarly situated in connection with the purchases of Securities.

395.     Plaintiffs have suffered damages in that, as a result of Defendants' concealment of material facts, they purchased Securities with a value far less than the amount paid. Plaintiffs would not have bought these Securities if they had been aware of the true facts that were concealed and not disclosed by Defendants.

396.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiffs have suffered damages in connection with their purchase of the Securities.

COUNT IV

(Violation of R.S.Mo. §409-003.301 by all Defendants)

397.     Plaintiffs reallege and incorporate herein by reference the allegations contained in the preceding and subsequent Paragraphs of this Complaint as if fully set out herein en hac verba and further allege:

398.     The entire amounts paid by each and every Plaintiff was subject to the risk of the Hilton Penthouse Convention Center Hotel enterprise to rent the Securities, branded Hilton Penthouse Convention Center Hotel rooms, at a projected rate for a projected range of days within each year. All of the economic benefits to be derived from the Security were inextricably bound to the success of the entire Hilton Hotel branded enterprise as a whole. The occupancy rates of the Security, from which Plaintiffs sought to derive rental profits, were dependent upon the success of the Hilton brand.

399.     The furnishing of the amounts paid by each and every Plaintiff for the Securities purchased were induced by Defendants' omissions of material fact set forth in paragraph

68 herein above and representations which gave rise to a reasonable understanding among the Plaintiffs that a valuable benefit in the form of prospective economic benefits would accrue to Plaintiffs from the entrepreneurial or managerial efforts of others managing the Hilton Penthouse Convention Center Hotel, the Branson Landing and the Rental Program at the Hilton Penthouse Convention Center Hotel, induced Plaintiffs to purchase the Securities. The economic benefit, over and above the amounts paid for the purchase of the Securities, that Defendants' sales team promised would flow to Plaintiffs from the purchase of the Securities were the primary motivation behind Plaintiffs' purchase of the Securities. Residency was never discussed and was specifically disallowed by the Defendants' purchase contract and other governing documents.

400.    Plaintiffs did not intend to receive any right to exercise practical and/or actual control over the managerial decisions of the Hilton enterprise. Furthermore, Plaintiffs did not exercise any power to influence the utilization of the capital invested in the Securities. Instead, the economic benefits that Plaintiffs were told by Defendants would flow from the purchase of the Securities would result from the name recognition of the Hilton Hotel brand, the strength of the rental program management, and the ability of the reservation system of the rental program to yield income after purchase.

401.    Defendants issued the Securities, which were not exempt from registration, to Plaintiffs without abiding by the registration requirements of Missouri, did not have any preemption there from and therefore Plaintiffs, under R.S.Mo. § 409-005.509, may recover the consideration paid for the Securities and interest at the legal rate of this State from the date of payment, costs and reasonable attorney's fees, less the amount of income received on the Securities.

402.     Plaintiffs who no longer own the Securities may recover damages. Damages are

the amount that would be recoverable upon a tender less the value of the Securities when

the purchaser disposed of it, plus interest at the legal rate of this State from the date of

disposition of the Securities, costs and reasonable attorney's fees determined by the court.

Tender requires only notice of willingness to exchange the Securities for the amount

specified.

COUNT V

(Violation of R.S.Mo. §409-005.501)

403.     Plaintiffs reallege and incorporate herein by reference the allegations contained in

the preceding and subsequent Paragraphs of this Complaint as if fully set out herein en

hac verba and further allege:

404.     It is unlawful for a person, in connection with the offer, sale, or purchase of a
security,

directly or indirectly:

(1) To employ a device, scheme or artifice to defraud;
(2) To make an untrue statement of a material fact or to omit to state a material fact
necessary in order to make the statement made, in light of the circumstances under which
it is made, not misleading; or
(3) To engage in an act, practice, or course of business that operates or would operate as
     a fraud or deceit upon another person.

R.S.Mo.§ 409-005-501.

405.     Defendants, through the sales and rental management presentations of the

unregistered Securities have employed a device, scheme or artifice to defraud described

in specificity above in this Complaint and incorporated by reference herein, by making

material omissions of fact as set forth in Paragraph 68 above and false representation as

set forth herein.

62

406.     Defendants, further through the sales and rental management presentations of the unregistered Securities, as described with specificity above in this Complaint and incorporated by reference herein, made several untrue statements of material facts and/or omitted to state material facts necessary in order to make the statements made not misleading in the true circumstances concerning the Defendants' actual ability to forecast or predict the profitability of participating in Defendants' rental management program and the minimum rental rates, the minimum occupancy rates, and the anticipated appreciation rates of the Securities.

407.     Defendants, through the intentional omission of material facts and false and fraudulent sales and rental presentation described with specificity above, engaged in acts, practices and/or a course of business which operated as a fraud or deceit upon the Plaintiffs by inducing Plaintiffs to purchase the Securities and enter the Defendants' rental management program based on dubious predictions of economic expectations that the Defendants knew to be false at the time such predictions were made. Moreover, the Defendants knew that these statements were untrue and the omissions were material and misleading, but made them to defraud Plaintiffs.

408.     Plaintiffs did not know that the statements of material facts made to them by Defendants during the sales presentations were untrue or that there was an omission of a statement of material fact.

409.     Plaintiffs did not receive any written offer, including financial and other information necessary to correct all material misstatements or omissions in the information required to be furnished to Plaintiffs, as of the time of the sale of Securities.

410.     Defendants, pursuant to the fraudulent scheme, business practice, and on the basis of untrue material facts and omissions, issued Securities, which were not exempt from registration, to Plaintiffs without abiding by the registration requirements of Missouri and therefore Plaintiffs, under R.S.Mo. §409-005.509, may recover the consideration paid for the Securities and interest at the legal rate of this State from the date of payment, costs and reasonable attorney's fees, less the amount of income received from the Securities.

411.     Plaintiffs who no longer own the Securities may recover damages. Damages are the amount that would be recoverable upon a tender less the value of the Securities when the purchaser disposed of it, plus interest at the legal rate of this State from the date of disposition of the Securities, costs and reasonable attorney's fees determined by the court. Tender requires only notice of willingness to exchange the Securities for the amount specified.

COUNT VI

(Violation of R.S.Mo. Chapter 407, et seq. by all Defendants)

412.     Plaintiffs reallege and incorporate herein by reference the allegations contained in the preceding and subsequent Paragraphs of this Complaint as if fully set out herein en hac verba and further allege:

413.     Plaintiffs bring this claim under Missouri consumer protection laws, particularly R.S.Mo. §407.020, et seq., who purchased the air rights to condominium hotel room units from Defendants, and who were thus subject to Defendants' above-described deceptive, unlawful and fraudulent conduct, specifically described in Section VI on or about the dates specified in Section VII and incorporated by reference herein.

414.    The air rights to condominium hotel room units, as described above, were purchased by the Plaintiffs and by other consumers similarly situated primarily for investment purposes.

415.    Defendants' contracts are set up in such a way as to make the air rights identical and in fact the same as that of a timeshare. Timeshares are merchandise pursuant to R.S.Mo. §407.630 and these sales must be treated as such.

416.    The Defendant developers of this project are former time share sales people, managers, and/or employees and have knowledge of the timeshare industry and are familiar with the sales contracts of the same.

417.    The Defendants violated their statutory duty under the Missouri Merchandising Practices Act by advertising, offering and selling the air rights to condominium-hotel room units at the Hilton Penthouse Convention Center Hotel at Branson Landing as described herein above.

418.    Further, Defendants' sales contracts are volumous pages of disclosures which they did not allow Plaintiffs sufficient time to review and reflect upon prior to signing.

419.    The Defendants violated their duty under the aforementioned statutes including but not limited to §407.020 by among other things, (a) representing that the condominium-hotel room units at the Hilton Penthouse Convention Center Hotel would earn a rate of return and/or was guaranteed, secured or protected, which Defendants knew or had reason to know was false and/or misleading; (b) making untrue statements of material facts and/or omitting to state material facts about the units at the Hilton Penthouse Convention Center Hotel; (c) failing to comply with applicable laws and regulations concerning the marketing and sale of the units; and/or (d) conducting the

offering and sale of the units at the Hilton Penthouse Convention Center Hotel without all required licensing and regulatory approvals.

420.    The Defendants' actions as alleged herein were materially deceptive and constituted fraud, false pretense, misrepresentation and the concealment, suppression and omission of material facts with the intent that Plaintiffs would rely upon the fraudulent misrepresentation, concealment, suppression and omission of such material facts, all in violation of the Missouri Merchandising Practices Act.

421.    Plaintiffs were injured by the many violations of the Missouri Merchandising Practices Act, and Plaintiffs have thereby been damaged in an amount to be proven at trial.

422.    Defendants' actions were intentional, willful and outrageous giving rise to punitive damages and attorney's fees authorized under the statute, R.S.Mo. §407.025.

COUNT VII

(Fraudulent Misrepresentation by All Defendants)

423.    Plaintiffs reallege and incorporate herein by reference the allegations contained in the preceding and subsequent Paragraphs of this Complaint as if fully set out herein en hac verba and further allege:

424.    Defendants made false and fraudulent misrepresentations, as described with specificity above and incorporated by reference herein, that as a result of Hilton Hotel branding, hotel reservations, room rates, occupancy rates, Defendants' rental program and the other amenities being delivered by the Branson Landing enterprise, the investment in the Securities would be profitable and the value of the Securities would

appreciate, without Plaintiffs, having to provide any services or oversight of the Defendants.

425.     Defendants presented Plaintiffs with prepared documents including a document entitled "Declaration" which purported to be the condominium declaration governing the units Plaintiffs were purchasing.

426.     Plaintiffs also signed a document entitled "Condominium Purchase Agreement" in which paragraph twelve (12) states in part:

> Seller reserves the right to make changes in the Declaration of Condominium and By-Laws and the exhibits thereto as may be necessary to conform to applicable laws and governmental regulations, to meet requirements of lending institutions or to expedite the sale of the other units. Such changes, however, shall not substantially diminish the value of the Unit.

427.     The Declaration recorded with the Taney County Recorder of Deeds is substantially different than the version given to Plaintiffs at closing and substantially diminished the value of the units sold to Plaintiffs in that portions of the unit that were to be sold to Plaintiffs in the original version are removed from the recorded version leaving Plaintiffs with less of the actual condominium. Defendants also added charges to the Common Expense Charge in the recorded version which were not present in the version given to Plaintiffs at purchase. The Master Association is referred to in the Declaration copy given to Plaintiffs generically but in the recorded version, Convention Center Hotel Master Association, Inc. is referenced, a non-existent corporation which has charged Plaintiffs dues through the condominium owner's association. A ground lease governing the land the project is built upon is referenced in the Declaration given to Plaintiffs at closing but a Master Lease along with the date it was executed is listed in the recorded version.

67

428.     Defendants also failed to disclose or provide Plaintiffs with the Declaration and Covenants governing the entire Convention Center Complex which govern Plaintiffs' units as well.

429.     Defendants made further representations and/or omissions to Plaintiffs specifically set out in Section VI above on or about the dates specifically set out in Section VII above and incorporated by reference herein.

430.     Defendants, and each of them, made these representations with the knowledge or belief that the representations were false or with an insufficient basis of information for making the representations.

431.     Defendants intended to induce Plaintiffs to act upon the misrepresentations by entering into the sales agreement to purchase the Securities and also entering into the rental management agreement.

432.     Plaintiffs were ignorant of the truth of the misrepresentations and concealments made by Defendants and in fact justifiably relied on the misrepresentations made by Defendants.

433.     As a direct and proximate result of Defendants' misstatements and misrepresentations of material facts, Plaintiffs entered into a written agreement for the purchase of the condominium hotel, entered into a written agreement to participate in the Defendants' rental management program, and suffered damages as more fully set forth herein above an in an amount to be proven at trial.

434.     As a result, Plaintiffs are, in the alternative, entitled to rescission of the contract, an accounting, and the return of any and all money or property given, plus interest and expenses.

435.    Defendants had actual knowledge of the fact that the representations were in fact false, and for these reasons, and because the conduct by these Defendants was malicious, oppressive and/or fraudulent, Plaintiffs are, therefore, entitled to punitive damages to make an example of and to punish these Defendants in addition to actual damages.

COUNT VIII

(Negligent Misrepresentation by All Defendants)

436.    Plaintiffs reallege and incorporate herein by reference the allegations contained in the preceding and subsequent Paragraphs of this Complaint as if fully set out herein en hac verba and further allege:

437.    Defendants supplied false guidance in discussions relating to the sale of Defendants' condominium hotel units at the Hilton Penthouse Convention Center Hotel as described with specificity above and incorporated by reference herein. Defendants failed to exercise reasonable care or competence in obtaining or communicating the information which consisted of misrepresentations, not only concerning the property value of the condominium hotel units, but also concerning the anticipated rental value and occupancy rate of the units, and the profitability of participating in Defendants' rental management program. Such misrepresentations were made in the course of Defendants' business, profession or employment, and/or in any such transaction in which Defendants had a pecuniary interest.

438.    The misrepresentations made to Plaintiffs included the false and fraudulent statements described above with specificity in Section VI in this complaint on the dates specified in Section VII and incorporated by reference herein.

439.     Defendants, and each of them, made these representations negligently, and without any reasonable basis for believing them to be true.

440.     Plaintiffs were ignorant of the truth of the misrepresentations and concealments made by Defendants and in fact justifiably relied on the misrepresentations made by Defendants and each of them.

441.     As a direct and proximate result of Defendants' misstatements and misrepresentations of material facts, Plaintiffs entered into a written agreement for the purchase of the condominium hotel unit, entered into a written agreement to participate in the Defendants' rental management program, and suffered damages as more fully set forth herein above and in an amount to be proven at trial.

442.     As a result, Plaintiffs are, in the alternative, entitled to rescission of the contract, an accounting, and return of any and all money or property given, plus interest and expenses.

COUNT IX

(Fraud in the Inducement by All Defendants)

443.     Plaintiffs reallege and incorporate herein by reference the allegations contained in the preceding and subsequent Paragraphs of this Complaint as if fully set out herein en hac verba and further allege:

444.     Plaintiffs contracted with Defendants and relied upon Defendants to provide their professional expertise and judgment with respect to the purchase of condominium hotel units at the Hilton Penthouse Convention Center Hotel. Defendants utilized an inside and outside sales team in order to make false representations to the Plaintiffs in order to induce their consent to enter into the purchase agreement and the rental management

70

agreement. Both Defendants' inside and outside sales team had knowledge or belief that the representations were false or knowledge that it had an insufficient basis for making the representations.

445.     The material omissions and false representations made to Plaintiffs included the fraudulent statements described with specificity above in Section VI made on or about the dates specified in Section VII and incorporated by reference herein.

446.     Defendants presented numerous false representations regarding the true economic value of such investment from Plaintiffs, despite knowing and concealing the true and correct facts of the rental values, expected rental occupancy rate of the Securities, and the amount of profits Plaintiffs would receive from participating in Defendants' rental management program.

447.     Defendants, and each of them, had a duty to disclose the true nature of all known material facts and circumstances surrounding the economic value of the Securities. Defendants had exclusive knowledge of all such material facts and such material facts were not known or reasonably accessible to Plaintiffs.

448.     The concealment of the true facts from Plaintiffs was done with the intent to induce their consent to enter into the purchase agreement and the rental management agreement.

449.     Plaintiffs justifiable reliance on statements made by Defendants was justified as Defendants purported to have professional expertise concerning the economic value of the condominium hotel units.

450.     As a result of Defendants' false representations regarding the true economic value of the condominium hotel units complained of in this complaint, Plaintiffs were unaware

of the true nature of the facts concerning the true value of the condominium hotel units as economic investments.

451.     As a result of the false representations, Plaintiffs entered into a written agreement for the purchase of the condominium hotel unit, entered into a written agreement to participate in the Defendants' rental management program, and suffered damages as more fully set out herein above in an amount to be proven at trial.

452.     As a result, Plaintiffs are, in the alternative, entitled to rescission of the contract, an accounting, and the return of any and all money or property given, plus interest and expenses.

453.     Defendants had actual knowledge of the fact that the representations were in fact false, and for these reasons, and because the conduct by these Defendants was malicious, oppressive and/or fraudulent, Plaintiffs are therefore, entitled to punitive damages to make an example of and to punish Defendants in addition to actual damages.

## COUNT X

### (Fraudulent Concealment by All Defendants)

454.     Plaintiffs reallege and incorporate herein by reference the allegations contained in the preceding and subsequent Paragraphs of this Complaint as if fully set out herein en hac verba and further allege:

455.      Plaintiffs contracted with Defendants and relied upon Defendants to provide their professional expertise and judgment with respect to the purchase of Securities at the Hilton Penthouse Convention Center Hotel. Defendants utilized an inside and outside sales team in order to sell these units. The teams employed by Defendants concealed

and/or suppressed material facts relating to the true economic value of the condominium units.

456.     The material facts concealed from Plaintiffs included the fraudulent statements described with specificity above in Section VI on the dates specified in Section VII and incorporated by reference herein.

457.     Defendants concealed and suppressed the material facts regarding the true economic value of such investment from Plaintiffs, despite knowing the true and correct facts regarding the Securities. The misrepresentations were made and the true and correct facts concealed by Defendants in order to intentionally induce the Plaintiffs' consent to purchase the condominium unit and enter into the rental management agreement with Defendants.

458.     Defendants, and each of them, had a duty to disclose the true nature of all known material facts and circumstances surrounding the rental values, expected rental occupancy rate, and relevant material facts described above and incorporated by reference herein. Defendants had exclusive knowledge of all such material facts and such material facts were not known or reasonably accessible to Plaintiffs.

459.     Plaintiffs' reliance on statements made by Defendants, and each of them, was justified as Defendants purported to have professional expertise concerning the economic value of the condominium hotel units.

460.     As a result of Defendants' intentional misrepresentation of material facts regarding the true economic value of the condominium hotel units complained of in the complaint, Plaintiffs were unaware of the true nature of the facts concerning the true value of the condominium hotel units as economic investments. Had Plaintiffs been

aware of the material facts concealed by Defendants, Plaintiffs would not have entered into any agreements with the Defendants.

461.     As a result of the concealment alleged, Plaintiffs entered into a written agreement for the purchase of the Securities, entered into a written agreement to participate in the Defendants' rental management program, and suffered damages as more fully set out herein above and in an amount to be proven at trial.

462.     As a result, Plaintiffs are, in the alternative, entitled to rescission of the contract, an accounting, and the return of any and all money or property given, plus interest and expenses.

463.     Defendants had actual knowledge of the fact that the representations were in fact false, and for these reasons, and because the conduct by these Defendants was malicious, oppressive and/or fraudulent, Plaintiffs are, therefore, entitled to punitive damages to make an example of and to punish these Defendants in addition to actual damages.

## COUNT XI

### (Breach of Fiduciary Duty by All Defendants)

464.     Plaintiffs reallege and incorporate herein by reference the allegations contained in the preceding and subsequent Paragraphs of this Complaint as if fully set out herein en hac verba and further allege:

465.     Plaintiffs and Defendants have a fiduciary relationship in that the Plaintiffs purchased units from Defendants and signed agreements with Defendants whereby Defendants would, unsupervised by Plaintiffs, rent out and manage their units as hotel rooms as part of the Hilton Penthouse Convention Center Hotel and in return, Plaintiffs would receive income from the rental of the units.

74

466.     Defendants have breached their duty to Plaintiffs by among other things plead in this petition by not renting Plaintiffs units on a rotational basis and overcharging Plaintiffs for expenses.

467.     Defendants' actions have caused Plaintiffs harm in that they have been monetarily damaged by Defendants' breach of their fiduciary duty.

468.     As a result, Plaintiffs are entitled to rescission of the contract, an accounting, and the return of any and all money or property given, plus interest and expenses.

COUNT XII

(Unlawful Transaction of Business against Richard E. Huffman)

469.     Plaintiffs reallege and incorporate herein by reference the allegations contained in the preceding and subsequent Paragraphs of this Complaint as if fully set out herein en hac verba and further allege:

470.     Defendant Richard E. Huffman purported the existence of Convention Center Hotel Master Association, Inc. by and through documents including the Penthouse Condominium Declaration filed with the Taney County, Missouri Recorder of Deeds.

471.     The Missouri Secretary of State has no record of Convention Center Hotel Master Association, Inc. ever existing or being incorporated. See Exhibit "3".

472.     Richard E. Huffman, using the non-existent entity, Convention Center Hotel Master Association, Inc., has charged and collected Plaintiffs money through the Penthouse Condominium Association, Inc.

473.     The Convention Center Hotel Master Association, Inc. has charged Plaintiffs and Plaintiffs have paid at least $56,000.00.

474.    Richard E. Huffman is personally liable for illegally transacting business through the Convention Center Hotel Master Association, Inc. without first registering said entity with the Missouri Secretary of State's office, pursuant to R.S.Mo. §417.200 and R.S.Mo. §351.053.

475.    Plaintiffs are entitled to a refund of all funds paid to the non-existent entity, Convention Center Hotel Master Association, Inc.

476.    Plaintiffs request Defendant Richard E. Huffman be penalized under the Missouri statues for his illegal conduct of business pursuant to R.S.Mo. §351.715.

477.    Plaintiffs request that all actions and transactions of the Convention Center Hotel Master Association, Inc. be declared void and for what other relief the Court deems just and proper.

COUNT XIII

(Breach of Contract Against Branson Landing Hotel, LLC

and Hilton Worldwide, Inc.)

478.    Plaintiffs reallege and incorporate herein by reference the allegations contained in the preceding and subsequent Paragraphs of this Complaint as if fully set out herein.

479.    Plaintiffs entered into the UMA with Defendant Branson Landing Hotel, LLC dba Hilton Promenade at Branson Landing and Hilton Worldwide, Inc. on or about the dates more specifically set out in Section VII above.

480.    Hilton Worldwide, Inc.'s employees, Mark Hartman or Bill Derbins, general manager of the Hilton Penthouse Convention Center Hotel at the time of execution of the agreement signed all of Plaintiffs' UMA's.

481.     Plaintiffs believed that they were dealing with Hilton as all correspondence, contracts and advertising contained Hilton's logo, address, phone number, and email address and all UMA's were signed by Hilton employees on behalf of Hilton Worldwide, Inc. See Exhibits 7, 8, and 9.

482.     In addition, Plaintiffs reasonably relied on the information provided to them by the sales representatives they spoke with more specifically set out in Section VI above and incorporated by reference herein.

483.     Pursuant to the UMA, Defendants have been renting Plaintiffs' hotel rooms to the general public and collecting money for the same.

484.     Section 4.b. states that the net rental income shall be charged 12% for the hotel services and the balance will be divided between the hotel owner (44%) and the unit owner (44%). See Exhibit 6.

485.     Defendants have also been charging Plaintiffs fees associated with the rental of the hotel room.

486.     The fees and costs Defendants are allowed to charge Plaintiffs is specifically set out in the UMA contract attached hereto as Exhibit 6.

487.     Defendants are charging Plaintiffs for items that the UMA states the hotel owner is to pay for.

488.     Pursuant to Section 4.f., 4.g., 4i., 5.a. and Exhibit 4.f., certain costs are to be paid for by the hotel Manager including a telephone system, high-speed internet access, cable, replacement of light bulbs, assisting hotel occupants with operation of all room appliances, adjust hardware for window coverings, cabinetry and doorways, and inspect

units for damages and collect for damage repair and replacement expenses from guests. See Exhibit 6.

489.     According to the Declaration, the patio doors and windows are not owned by the unit owner and the unit owner is not responsible for repair or maintenance of the patio doors and windows.

490.     Defendants have been charging Plaintiffs for some if not all of the items that, according to the contract, are to be paid for by the hotel owner or manager. See Exhibit 12.

491.     Plaintiffs are being charged for door adjustments, tightening television cables, toilets and other drains being clogged by Hilton guests, replacement costs of items being lost, stolen or broken from units, window locks, telephones, patio doors and hardware, etc.

492.     These charges are made in breach of the UMA and have been and are currently damaging Plaintiffs.

493.     Defendants knew these charges were to be paid for by the hotel owner and/or manager and continued to charge Plaintiffs for them.

494.     The hotel owner and/or manager is to pay for light bulbs according to the contract but upon investigation by Plaintiffs, the Plaintiffs' COA is being charged for light bulbs which is paid by the COA dues, paid by Plaintiffs, also in breach of the UMA.

495.      Defendants have breached the UMA between them and Plaintiffs and Plaintiffs are entitled to damages in an amount to be proven at trial.

496.     Alternatively, Plaintiffs are entitled to cancellation of contract and damages for all improperly withheld fees and charges.

497.     Plaintiffs request a full accounting of all of Defendants records to determine what charges are being made, where they are derived from, and if they are proper.

## REQUEST AND PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that the Court enter judgment in their favor and against Defendants as follows:

## PRAYER FOR RELIEF

Plaintiffs pray for judgment and relief against Defendants as follows:

1. For damages according to proof;

2. For interest on all damages as allowed by the laws of the State of Missouri according to proof at time of trial;

3. For a temporary restraining order, permanent or temporary prohibitory or mandatory injunction or a writ of prohibition or mandamus;

4. For the imposition of a civil penalty of not more than $2,500.00 for a single violation or $100,000.00 for multiple violations in a single proceeding or series of related proceedings;

5. For the issuance of a declaratory judgment;

6. For an order of rescission and restitution to investors;

7. For an order for an accounting;

8. For an order of punitive damages;

9. For the appointment of a receiver or conservator for the Defendants' assets;

10. For an order of payment of the division's investigative costs;

11. For an order of such other relief as the court deems just;

12. For consideration paid for the Securities and interest at the legal rate of Missouri from the date of payment plus all expenses incurred, costs and reasonable attorney's fees, less the amount of income received on the Securities;

13. For damages for each Plaintiff who no longer owns the Securities in the amount that would be recoverable upon a tender less the value of the Securities when the Plaintiff disposed of it, plus interest at the legal rate of this State from the date of disposition of the Securities, costs and reasonable attorney's fees determined by the court. Tender requires only notice of willingness to exchange the Securities for the amount specified; and

14. For an order for costs and attorneys' fees as allowed by law.

Dated: June 13, 2012

Respectfully Submitted,

**MORRISSEY LAW OFFICE, LLC**

By:____/s Joseph A. Morrissey_____
Joseph A. Morrissey, MO Bar# 30202
Anna Morrissey MO Bar# 57756
114 W. Adams
Branson, Missouri 65616
Phone: (417)334-7581
Fax: (417)334-2071
ATTORNEYS FOR PLAINTIFFS

Respectfully Submitted,

**MORRISSEY LAW OFFICE, LLC**

By:____/s Anna M. Morrissey_____
Joseph A. Morrissey, MO Bar# 30202
Anna Morrissey MO Bar# 57756
114 W. Adams
Branson, Missouri 65616
Phone: (417)334-7581
Fax: (417)334-2071
ATTORNEYS FOR PLAINTIFFS